Stanley W. McPHERSON, Petitioner,

v.

Phillip COOMBE, Jr., Raymond Broaddus, Walter R. Kelly, Lt. Dickerson, Sgt. McKeon, C.O. Core, C.O. Borkouski, C.O. Ahern, C.O. Ellis, C.O. Robinson, C.O. D. Matyas, C.O. Pirammi, Hall Capt. Covert, C.O. Barmontha,, Sgt. Wright, S.B. Johnson, C.O. Weigand, C.O. R.W. Ruble, C.O. Sticth, C.O. Snyder, C.O. A. Doty, C.O. Ricatone, C.O. Moffat, Sgt. Chappman, C.O. Kruger, Respondents.

No. 95–CV–646(H).

United States District Court,
W.D. New York.

Oct. 20, 1998.

Stanley W. McPherson, Albion, NY, for pro se.

Patrick Gallagher, D. Patrick Gallagher, Block & Colucci, P.C., Buffalo, NY, for Petitioner.

Jerry McGrier, Sr., Asst. Atty. Gen., Buffalo, NY, for Respondents.

## DECISION & ORDER

HECKMAN, United States Magistrate Judge.

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. On July 20, 1998, defendants filed a motion for summary judgment pursuant to FED.R.CIV.P. 56 (Item 59). The motion was argued on Tuesday, September 29, 1998. For the reasons stated below, defendants' motion is granted in part and denied in part.

## BACKGROUND

On August 1, 1995, plaintiff Stanley W. McPherson filed this complaint pursuant to 42 U.S.C. § 1983, alleging violations of his First, Eighth, and Fourteenth Amendment constitutional rights (*See* Item 1; Item 17). Specifically, plaintiff alleges that prison officials at Attica Correctional Facility (Attica) and Orleans Correctional Facility (Orleans) were deliberately indifferent to his health care needs by placing him in a setting where he came into contact with environmental tobacco smoke (ETS) (*See* Item 1; Item 17).[1] According to plaintiff, this constitutes cruel and unusual punishment (Item, ¶ 4). Plaintiff does not allege that he has suffered any physical injury due to his contact with ETS. Rather, plaintiff is concerned about the future harm posed by exposure to ETS (Item 1, ¶ 3; Item 17, ¶ 3).

Plaintiff further alleges violations of his First and Fourteenth Amendment rights to speech and assembly because he was harassed by correctional officers when he voiced concern about being placed in a non-healthy environment (Item 17, ¶¶ 9 – 10). It is also alleged that the levels of tobacco smoke hinders plaintiff's movement in the dormitory at Orleans Correctional Facility (*See* Item 66, ¶ 18). According to plaintiff, the levels of ETS in the dormitory prevents him from using the telephone, associating with other prisoners, watching television, using the microwave, or even sitting in a common area of the dormitory (Item 66, ¶ 20).

## DISCUSSION

On June 27, 1997, plaintiff filed a motion seeking a preliminary injunction with respect to conditions at Orleans and a temporary restraining order against named and unnamed corrections officers who allegedly harassed plaintiff (Item 36). Plaintiff's motion was denied because his allegations "f[e]ll far short of the showing of irreparable harm necessary to obtain the 'extraordinary remedy' of preliminary injunctive relied under Rule 65" (Item 51, at 4). Plaintiff's request for a temporary restraining order was denied because plaintiff failed to demonstrate that he suffered any harm from the alleged abuse,

---

1. Plaintiff was incarcerated at Attica from March 29, 1992, until July 2, 1995, at which time he transferred to Orleans.

nor did he provide sufficient details to the correctional facility to allow an investigation of his claims (Item 51, at 5). Defendants now move for summary judgment pursuant to FED.R.CIV.P. 56 on three grounds (*See* Item 61). First, defendants Coombe, Broaddus, Kelly, and Johnson were not personally involved in the alleged violations of plaintiff's rights. Second, plaintiff's Eighth Amendment rights have not been violated. And third, defendants did not violate plaintiff's First Amendment right to free speech and assembly. Each ground will be discussed in turn.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party will be entitled to judgment as a matter of law because the non-moving party has failed to meet its burden of proof. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. However, it is the responsibility of the moving party to demonstrate through a showing of those papers submitted to the court that the non-moving party has failed to show that there is a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548.

In order to survive a motion for summary judgment, the nonmoving party must show that there is no genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir.1993). In reviewing the motion, the court must view all facts "in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences." *Salahuddin*, 993 F.2d at 308. Even with consideration given to the nonmoving party, the burden is still on the nonmoving party to show that there is a genuine issue of material fact. *See* FED.R.CIV.P. 56(e).

## I. *Personal Involvement of Defendants Coombe, Broaddus, Kelly and Johnson.*

■ The first issue presented is whether a prison official can be held liable under 42

U.S.C. § 1983 if the official was not personally involved in the alleged violation of plaintiff's rights. Personal involvement of a defendant is a prerequisite to any award of damages under 42 U.S.C. § 1983. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir.1991); *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir.1986); *McKinnon v. Patterson*, 568 F.2d 930, 934 (2d Cir.1977), *cert. denied*, 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978).

The Second Circuit has identified several ways in which a supervisory official can be personally involved in a deprivation of plaintiff's rights under § 1983. The official can directly participate in the infraction. Failure to remedy a violation after learning of it through a report or appeal will also bring about liability on the part of an official. The official can also create a policy or custom which allows unconstitutional practices to occur. If such practices already exist, the official can be liable if he or she allows the practices or policy to continue. And finally, the official can manage in a grossly negligent manner the subordinates who caused the unlawful event or condition. *Williams*, 781 F.2d at 323–24; *see also Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir.1998) (noting that the Second Circuit "has long recognized that supervisors may be 'personally involved' in the constitutional torts of their supervisees").

■ Plaintiff failed to show how defendants Coombe, Broaddus, and Kelly were personally involved in any alleged deprivation of his First, Eighth and Fourteenth Amendment rights. Defendants Coombe, Commissioner of Correctional Services, and Assistant Commissioner Broaddus were named as defendants because they allegedly failed to take disciplinary action with regard to corrections officers and prison staff who fail to abide by prison smoking regulations (Item 1, ¶¶ 3, 6; Item 17, ¶¶ 3, 6). There is nothing in plaintiff's papers to show that Defendants Coombe and Broaddus created any policy under which a violation occurred, nor are there any facts showing that they were grossly negligent in seeing that any

policies were enforced. Superintendents Kelly and Johnson were named as defendants for failing to provide a non-smoking environment for non-smoking inmates (Item 1, ¶ 2; Item 17, ¶ 2). There is nothing in plaintiff's allegations to show that defendants Coombe, Kelly and Broaddus had any knowledge of plaintiff's concern regarding his exposure to ETS. Accordingly, plaintiff's claims against defendants Coombe, Kelly and Broaddus will be dismissed.

■ On September 5, 1995, Superintendent Johnson received an inmate grievance report regarding second hand smoke at Orleans (*See* Item 61, at 5). Plaintiff requested that the facility provide a smoke-free dorm, and suggested that the facility conduct a survey to determine the feasibility of his request (Item 61, at 5). In the report, plaintiff indicated that his health was in jeopardy, though he did not indicate the specific health threats he faced (Item 61, at 5). Plaintiff's request was denied by the Central Office Review Committee ("CORC") on the basis of logistical problems in establishing smoke free dormitories (Item 46, ex. A; Item 61, at 5). Defendant Johnson's denial of plaintiff's request suggests that she was personally involved in decisions leading to this cause of action. Therefore, defendants' motion for summary judgment as to plaintiff's claims against defendant Johnson is denied.

## II. *Eighth Amendment Claim*

■ Plaintiff claims prison officials were deliberately indifferent to the risk of future harm caused by his exposure to ETS. In *Helling v. McKinney*, which dealt with the potential effects of exposure to second hand cigarette smoke, the Supreme Court indicated that prison officials cannot "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering." 509 U.S. 25, 33, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In order to make an Eighth Amendment claim based on conditions of incarceration, plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm," and he must demonstrate that prison officials were deliberately indifferent to his health and safety. *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

Plaintiff is first required to show that the alleged violation is sufficiently serious. *Id.* To meet this standard, plaintiff "must show that he is being exposed to unreasonably high levels of ETS," and "that the risk of [exposure] is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 35–36, 113 S.Ct. 2475.

While incarcerated at Attica, plaintiff indicates that he was housed in a poorly ventilated housing unit with 41 other inmates (Item 66, at 1). Smoking was allowed at all times (Item 66, at 1). While incarcerated at Orleans, plaintiff is housed in a dormitory with approximately 90 other inmates (Item 66, at 2). Smoking is allowed in all areas of the dormitory (Item 46, at 2; Item 66, at 2). Plaintiff contends that he is unable to use the telephone, watch television, associate with other inmates in the day room, use the microwave, or even sit in a chair due to the levels of smoke in the day room (Item 66, at 2). In order to access the bathroom facilities plaintiff must pass through the smoke-filled day room (Item 66, at 2).

There is growing recognition in this country of the health risks posed by exposure to second hand smoke (*See* Item 67, ex. C). Along with increased risks of lung cancer, passive smoke has been found to have other deleterious affects on adult respiratory health (Item 67, ex. C). A fact-finder could determine that the risk of future harm faced by plaintiff, given the conditions under which he is confined, is not a risk that society chooses to tolerate. *See Helling* 509 U.S. at 36, 113 S.Ct. 2475; *see also Warren v. Keane*, 937 F.Supp. 301, 305 (S.D.N.Y.1996).

Citing *Blyden v. Bartlett*, No. 95–CV–1071E(F), 1997 WL 584308 (W.D.N.Y. Sept.9, 1997), defendants argue that plaintiff has not shown any serious risk of harm because he has not sought treatment nor complained of ailments associated with exposure to ETS (Item 61, at 9). Plaintiff's case differs from *Blyden*. Plaintiff's allegations are based on an alleged danger to future health risks, whereas *Blyden's* claim focused on the effects exposure had on current health prob-

lems. *See id.* at *2. *Blyden's* claim was dismissed because he provided no evidence substantiating the alleged effects that bunking with a smoking cell mate had on his allergies. *Id.* Conversely, plaintiffs' claim in *Warren* survived summary judgment not because plaintiffs' alleged headaches and dizziness due to ETS exposure, but because the evidence "afford[ed] a rational basis for a fact-finder to conclude that defendants confinement exposed [plaintiffs] to unreasonably dangerous levels of ETS and violated contemporary standards of decency." *Warren,* 937 F.Supp. at 305. Consequently, plaintiff need not demonstrate that his health is currently affected by his exposure. *See Helling,* 509 U.S. at 35–36, 113 S.Ct. 2475.

■ It is not enough for plaintiff to show that he is confined under conditions that may violate contemporary standards of decency. Plaintiff must also show that prison officials were deliberately indifferent to plaintiff's health concerns. *See Helling,* 509 U.S. at 36, 113 S.Ct. 2475; *Farmer,* 511 U.S. at 834, 114 S.Ct. 1970. Deliberate indifference requires a showing that prison officials knew of and disregarded an excessive risk to inmate health and safety. *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970. An official must be aware of both the "facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.

Defendants are aware of facts which can lead to an inference that a risk of harm exists. Furthermore, facts exist where a jury can find that they have drawn the inference. Plaintiff's grievance requesting a nonsmoking dormitory for health reasons was denied based on the logistical concerns of running a correctional system that operated at over 100% capacity (*See* Item 46, ex. A). In denying plaintiff's request, the Central Office Review Committee indicated that this issue has been previously raised. CORC concluded its review, "assert[ing] that any health concerns the [plaintiff] may have should be addressed to [Orleans'] health services" (Item 46, ex. A).

■ In examining the evidence in the light most favorable to the plaintiff, the evidence suggests that plaintiff's health concerns were balanced against the Department of Correctional Services difficulties in running an overburdened prison system. This report, as well as other prisoner claims relating to ETS, could lead a fact-finder to conclude that defendants were aware of the potential risks to plaintiff's future health. *See e.g., Warren,* 937 F.Supp. at 301 (denying summary judgment because a fact finder could "conclude that defendants confinement exposed them to unreasonably dangerous levels of ETS and violated contemporary standards of decency"); *Davidson v. Coughlin,* 920 F.Supp. 305 (N.D.N.Y.1996) (granting summary judgment because plaintiff failed to demonstrate level of smoke or degree of exposure). Therefore, summary judgment as to plaintiff's Eighth Amendment claim is denied.

### III. *Prison Smoking Policies do not Violate Prisoner's First Amendment Rights*

■ Plaintiff's final claim is that prison regulations permitting smoking in dormitory areas violate plaintiff's First Amendment Rights to freedom of association because his movement within the dormitory is hampered by his attempts to evade contact with ETS. Prison regulations limiting an inmate's First Amendment rights are valid if the regulation is "reasonably related to legitimate penological interests." *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). For the reasons stated below, defendants' motion for summary judgment will be granted as to plaintiff's First Amendment claims.

■ The reasonableness of a prison regulation is determined by using a four part test outlined by the Supreme Court in *Turner v. Safley.* First, there must be valid, rational connection between the regulation and the governmental interest. ˙482 U.S. at 89, 107 S.Ct. 2254. Second, one should examine whether an inmate has alternative means of exercising the right in question. *Id.* 482 U.S. at 90, 107 S.Ct. 2254. The third consideration is the impact that accommodation of the right would have on prison guards, other inmates, and prison resources. *Id.* Finally, *Turner* asks whether there are any alternative means of exercising the right. *Id.*

In other instances when a governmental regulation inadvertently impinges on a plaintiff's First Amendment rights, the burden has been placed on the government to show that its interests are paramount. *See Elrod v. Burns*, 427 U.S. 347, 362, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976); *Buckley v. Valeo*, 424 U.S. 1, 64, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976), *see also Procunier v. Martinez*, 416 U.S. 396, 413–14, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989). However, it is inappropriate to use such a high standard when reviewing regulations adopted by prison authorities. *Thornburgh v. Abbott*, 490 U.S. 401, 409–10, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Turner*, 482 U.S. at 81, 107 S.Ct. 2254. Deference is given to prison authorities to regulate activities that occur within prison walls. *Turner*, 482 U.S. at 85, 107 S.Ct. 2254.

Orleans has established smoking and non-smoking areas within the facility in accordance with New York State's Guidelines for Smoking Policies (*See* Item 46, exs. B, C). While smoking is permitted in dormitories, "housing unit TV rooms" are identified as non-smoking areas (Item 46, ex. C). These guidelines regulate the activities of both prison inmates and prison staff (*See* Item 46, ex. C). It is clearly within the legitimate province of prison administration to establish these sorts of guidelines. *See Turner*, 482 U.S. at 84–85, 107 S.Ct. 2254; *see also Martinez*, 416 U.S. at 405–06, 94 S.Ct. 1800 (1974)(recognizing that courts are ill equipped to deal with problems of prison administration). Furthermore, the designated non-smoking areas give plaintiff other opportunities to exercise his right to associate with other inmates. Accordingly, defendants' motion for summary judgment as to plaintiff's First Amendment claims is granted.

## CONCLUSION

For the above mentioned reasons, defendant's motion for summary (**Item 59**) is granted in part and denied in part. Claims against defendants Coombe, Broaddus, and Kelly are dismissed for lack of personal involvement. Summary judgment is also granted as to plaintiff's First Amendment claim. Summary judgment is denied as to plaintiff's Eighth Amendment claims.

**SO ORDERED.**