Anthony GILL, Plaintiff,

v.

Gregory SMITH, Correctional Officer, Auburn Correctional Facility, Defendant.

No. 9:00–CV–1905(FJS/GJD).

United States District Court, N.D. New York.

July 11, 2003.

Anthony G. Gill, Five Points Correctional Facility, Romulus, NY, Pro se.

Office of the New York, State Attorney General, Syracuse, NY, Maria Moran, AAG, of Counsel, Attorneys for Defendant.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

## I. INTRODUCTION

Plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983 on December 11, 2000. He asserts that Defendant violated his Eighth Amendment right to be free from cruel and unusual punishment by exposing him to environmental tobacco smoke and by continuing the exposure with the knowledge that it adversely impacted his health. In addition, Plaintiff claims that Defendant threatened retaliation against the library staff unless Plaintiff dropped his complaint, in violation of his First and Eighth Amendment rights.

To support his claims, Plaintiff alleges that Defendant smoked while on duty within the law library, the general library, while at his assigned post, while traversing in and about the prison's media center, and while at the law library desk. Plaintiff further states that, on numerous occasions, he requested that Defendant not smoke cigarettes in the law library or general library areas because he suffered from chronic asthma and breathing conditions, which cigarette smoke aggravated, and that, on each occasion, Defendant ignored Plaintiff's requests to stop.

Plaintiff filed an institutional grievance against Defendant for smoking while on duty and alleges that Defendant then threatened to retaliate against all of the law library workers unless Plaintiff withdrew his grievance. Plaintiff asserts that Defendant's threat of retaliation created a hostile personal work environment and that the library staff alienated and treated him indifferently, resulting in great stress and depression.

On April 10, 2002, Defendant moved for summary judgment on the grounds (1) that Plaintiff failed to establish a constitutional cause of action under § 1983, (2) that Plaintiff's pendent state law claims should be dismissed, and (3) that qualified immunity barred Plaintiff's claims. Plaintiff cross-moved for summary judgment,

contending that he had established a *prima facie* cause of action under § 1983.

On December 10, 2002, Magistrate Judge DiBianco issued a Report–Recommendation in which he recommended that the Court grant Defendant's motion for summary judgment and deny Plaintiff's cross-motion. Specifically, Magistrate Judge DiBianco found (1) that Plaintiff's Eighth Amendment claim based upon his exposure to environmental tobacco smoke failed because Plaintiff had not established that he was exposed to unreasonably high levels of cigarette smoke and (2) that Plaintiff's First Amendment retaliation claim failed because the threats that Defendant allegedly made did not deter Plaintiff from exercising his First Amendment rights.[1]

Presently before the Court are Plaintiff's objections to Magistrate Judge DiBianco's Report–Recommendation.

## II. DISCUSSION

### A. Standard of review

The Court reviews *de novo* those findings and recommendations in a magistrate judge's report-recommendation to which a party has filed timely objections and for clear error those parts of the report-recommendation to which a party does not object. *See* 28 U.S.C. § 636(b)(1)(C); Fed. R.Civ.P. 72; *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir.1990).

A court should grant a motion for summary judgment only if "there is no genuine issue as to any material fact and when, based upon facts not in dispute, the moving party is entitled to judgment as a matter of law." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106

S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986)). In making this determination, the court must resolve all ambiguities and draw all reasonable inferences in a light most favorable to the non-moving party. *See id.* (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962) (per curiam)).

### B. Plaintiff's Eighth Amendment claim

■ To establish an Eighth Amendment violation, a plaintiff must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials acted with "deliberate indifference." *See Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (citations omitted). To establish deliberate indifference, a plaintiff must demonstrate that prison officials actually knew of and disregarded an excessive risk of harm to his health and safety. *See id.* at 837, 114 S.Ct. 1970.

■ Specifically, in the case of exposure to environmental tobacco smoke ("ETS"), a plaintiff must satisfy the objective prong of an Eighth Amendment claim by showing that he was exposed to unreasonably high levels of ETS. *See Helling v. McKinney*, 509 U.S. 25, 35, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). Determining the objective factor "requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS." *Id.* at 36, 113 S.Ct. 2475. The court also must assess "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary

---

1. Magistrate Judge DiBianco also recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims based upon his recommendation that the Court dismiss Plaintiff's federal claims.

standards of decency to expose *anyone* unwillingly to such a risk." *Id.*

■ In addition to the objective prong, a plaintiff must satisfy the subjective requirement of an Eighth Amendment claim by showing that the defendant was deliberately indifferent to the plaintiff's medical needs or safety in exposing him to ETS, "determined in light of the prison authorities' current attitudes and conduct[.]" *Id.*

In *Helling*, the plaintiff alleged that he was assigned to a cell with an inmate who smoked five packs of cigarettes per day and further asserted a variety of health problems allegedly caused by his exposure to ETS. *See Helling*, 509 U.S. at 28, 113 S.Ct. 2475. Based upon these facts, the Supreme Court held that the plaintiff had stated a valid cause of action under the Eighth Amendment and that there were issues of fact regarding both the subjective and objective elements required to prove an Eighth Amendment violation that precluded summary judgment. *See id.* at 35, 113 S.Ct. 2475.

Likewise, in *Warren v. Keane*, 937 F.Supp. 301 (S.D.N.Y.1996), the court held that summary judgment was not appropriate because there was a question of fact as to whether the levels of ETS to which the plaintiffs were exposed violated contemporary standards of decency. *See id.* at 305. In that case, the jail's policy allowed for smoking within the cells as well as in the recreation room, and the plaintiffs alleged that exposure to that level of ETS in unventilated cells and common areas at the prison for five years created a serious long-term health risk. *See id.* at 303. Moreover, they asserted that the prison authorities did not enforce the non-smoking policies that did exist in certain areas. *See id.; see also McPherson v. Coombe*, 29 F.Supp.2d 141 (W.D.N.Y.1998) (denying summary judgment where the plaintiff was housed with forty-one smokers in a poorly ventilated housing unit because of factual questions as to whether smoke conditions in the prison violated contemporary standards of decency and whether prison officials were aware of potential risks to the plaintiff's future health). *But see Oliver v. Deen*, 77 F.3d 156 (7th Cir.1996) (granting summary judgment where the plaintiff, a mild asthmatic, was housed with a smoker for 133 days).[2]

In *Davidson v. Coughlin*, 920 F.Supp. 305 (N.D.N.Y.1996), Judge McAvoy granted summary judgment for the defendant because the plaintiff failed to provide any evidence about the level of smoke in the facility, the degree of exposure, or any medical problems associated with exposure to ETS. *See id.* at 309. Similarly, in *La-Croix v. Williams*, No. 97–CV–0790E(F), 2000 WL 1375737 (W.D.N.Y. Sept.21, 2000), the plaintiff alleged that he was housed in a poorly ventilated 22–bed dormitory, which he shared with twenty-one smokers. *See id.* at *3. The court held that this, without any documentation to support the alleged resulting medical problems, was insufficient to support an Eighth Amendment claim and granted the defendant's motion for summary judgment. *See id.; see also Zaire v. Artuz*, No. 99 Civ.

---

**2.** Although the asthmatic plaintiff's involuntary exposure to ETS was greater in *Oliver* than in the present case, *Oliver* is still distinguishable because it was decided more than seven years ago. As the courts have noted, society's attitude toward exposure to ETS is evolving. *See Helling*, 509 U.S. at 29, 113 S.Ct. 2475 (stating that standards of decency are evolving on the issue of involuntary exposure to ETS); *see also McPherson*, 29 F.Supp.2d at 145 (stating that there is a growing recognition of the health risk posed by exposure to ETS). Thus, while this decision remains good law, it may not provide the current and accurate parameters for judging what levels of exposure to ETS are sufficient to support an Eighth Amendment claim.

9817, 2003 WL 230868, *5–*6 (S.D.N.Y. Feb.3, 2003) (granting summary judgment where the plaintiff failed to provide evidence of the levels of ETS to which he was exposed and any resulting medical problems); *Blyden v. Bartlett,* No. 95–CV–1071E(F), 1997 WL 584308, *2 (W.D.N.Y. Sept.9, 1997) (granting summary judgment where the plaintiff failed to demonstrate that his alleged injuries—headaches, irritability and nausea—resulting from his exposure to ETS were sufficiently severe to implicate a violation of his Eighth Amendment rights).

Based upon the facts of this case, Magistrate Judge DiBianco concluded that Plaintiff had failed to establish the objective prong of the Eighth Amendment test; i.e., that he was exposed to unreasonably high levels of cigarette smoke.[3] Accordingly, Magistrate Judge DiBianco recommended that the Court grant Defendant's motion for summary judgment with respect to Plaintiff's Eighth Amendment claim based upon his involuntary exposure to ETS.

Plaintiff objects to Magistrate Judge DiBianco's conclusion, contending that he has established a valid claim under the Eighth Amendment. Specifically, Plaintiff asserts that Magistrate Judge DiBianco misinterpreted the standards set forth in *Helling.* Plaintiff asserts that he can meet the objective prong of this test by demonstrating that his exposure to ETS, and the risk of the future harm he faces, is one that society chooses not to tolerate. Furthermore, Plaintiff argues that a factfinder could conclude that Defendant acted in deliberate indifference to the known risk, as demonstrated by the fact that he continued to smoke despite Plaintiff's requests that he stop, the Auburn facility's no-smoking policy, and the surgeon general's warning regarding exposure to ETS.

As in *Helling* and *Warren,* Plaintiff has provided evidence of his involuntary exposure to ETS as well as medical records to support his claims of harm. He alleges, and affidavits support, that he was exposed to ETS when he went to the law library during scheduled call outs, from 1:30 p.m. to 4:30 p.m. and 7:00 p.m. to 9:30 p.m. daily, at those times when Defendant was on duty. *See* Affidavit of Colon Toledo, sworn to December 11, 2000 ("Toledo Aff."), at ¶ 6; Affidavit of Hizbullahankhamon Qabail, sworn to January 21, 2001 ("Qabail Aff."), at ¶ 3; Affidavit of Jean Belot, Jr., sworn to November 21, 2000 ("Belot Aff."), at ¶ 5. Further, Plaintiff has provided medical records to show that he does have asthma; and he specifically documented an asthma attack after an alleged visit to the law library during which he asserts that Defendant was smoking. *See* Plaintiff's Response and Cross Motion, Exhibits "E" & "F" (Plaintiff's medical records).

In response, Defendant asserts that, although he worked four days per week in the media center, where the law library is located, from 12:15 p.m. to 8:30 p.m., he did not smoke in the buildings at Auburn. *See* Affidavit of Gregory E. Smith, sworn to April 9, 2002 ("Smith Aff."), at ¶¶ 3–5. In addition, Laurence M. Cheney, the Liaison Officer at Auburn Correctional Facility, stated that Plaintiff was disciplined several times during his two and one-half year stay at the prison, resulting in periods of time during which he was confined to his cell and, thus, did not have the opportunity to attend the media center. *See* Affidavit of Laurence M. Cheney, sworn to April 4, 2002 ("Cheney Aff."), at ¶ 3 & Exhibit "A"

**3.** Based upon his determination that Plaintiff had failed to establish the objective prong of his Eighth Amendment claim, Magistrate Judge DiBianco did not address the subjective prong of this claim; i.e., that Defendant acted with deliberate indifference.

(Plaintiff's transfer history). Moreover, during the year 2000, Plaintiff's disciplinary history indicates that he was not allowed to go to the media center for approximately three and one-half months. *See id.* Thus, Defendant argues that, even if he did smoke, Plaintiff's limited exposure to ETS fails to rise to the levels of unreasonable exposure set forth in *Helling* and *Warren.*

■ Viewing the evidence in the light most favorable to Plaintiff, the Court finds that there are material issues of fact as to whether Defendant smoked while on duty and, if he did, whether, given his knowledge of Plaintiff's medical condition, the level of ETS to which he allegedly exposed Plaintiff violated "contemporary standards of decency." *Helling,* 509 U.S. at 35, 113 S.Ct. 2475. *Davidson* and *Williams* further support a denial of Defendant's motion for summary judgment. In contrast to those cases, where the plaintiffs failed to provide evidence as to their level of exposure to ETS or any resulting medical problems, Plaintiff has provided evidence concerning the level of his alleged exposure to ETS and the asserted medical problems which resulted. Although Plaintiff may have trouble establishing whether his involuntary exposure to ETS is beyond the bounds of what society is willing to tolerate, this issue as well as the issue of whether Defendant smoked while he was on duty, are questions of fact for the jury to determine.

As noted, Magistrate Judge DiBianco did not address the subjective prong of Plaintiff's Eighth Amendment claim. However, a review of the record demonstrates that Plaintiff has provided evidence to meet the subjective requirement that Defendant acted with deliberate indifference. Specifically, Plaintiff cites Auburn's no-smoking policy as confirmation that Defendant knew of the risk of exposure to ETS. As the *Warren* court found, a rational factfinder could accept the smoking policy as evidence of "an admission by defendants both to the dangerousness of ETS and their awareness of such danger." *Warren,* 937 F.Supp. at 306. Plaintiff further alleges that he made individual requests to Defendant that he stop smoking due to Plaintiff's health problems. If a reasonable factfinder concludes that Defendant did smoke while on duty and that the level of Plaintiff's exposure to ETS was beyond the bounds which society is willing to tolerate, Defendant's failure to respond to Plaintiff's repeated requests is further evidence from which a reasonable factfinder could conclude that Defendant acted with deliberate indifference to Plaintiff's medical needs in exposing him to ETS.

In sum, Plaintiff has come forward with sufficient evidence to create an issue of fact with respect to both the objective and subjective prongs of his Eighth Amendment claim. Accordingly, the Court denies Defendant's motion for summary judgment with respect to Plaintiff's Eighth Amendment claim.

## C. Plaintiff's First Amendment retaliation claim [4]

■ To survive summary dismissal of a First Amendment retaliation claim, the

---

**4.** Plaintiff also alleges that, in addition to violating his First Amendment rights, Defendant's threat of retaliation affected his own safety and thus violated his Eighth Amendment rights. Magistrate Judge DiBianco concluded that, even if Defendant made a verbal threat, it would not rise to the level of a constitutional violation of the Eighth Amendment. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986) (holding that verbal abuse, vulgarity and even threats are insufficient to rise to the level of a constitutional violation); *Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y.1996) (holding that threats of verbal

plaintiff must advance non-conclusory allegations establishing (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech (or conduct) and the adverse action. *See Diesel v. Town of Lewisboro,* 232 F.3d 92, 107 (2d Cir.2000) (quotation and other citations omitted).

Plaintiff alleges that Defendant threatened to retaliate against all of the library workers unless he dropped his grievance. Magistrate Judge DiBianco concluded, however, that, because Plaintiff did not withdraw his grievance, whatever threats Defendant allegedly made did not deter Plaintiff from exercising his First Amendment rights. Accordingly, he recommended that the Court grant Defendant's motion for summary judgment with respect to this claim.

■ Plaintiff raises no objections to Magistrate Judge DiBianco's conclusion with respect to this claim. Since Defendant's verbal threats, although unprofessional, did not deter Plaintiff from proceeding with his grievance, the Court grants Defendant's motion with respect to this claim.

**D. Defendant's qualified immunity defense[5]**

■ The doctrine of qualified immunity protects government officials from suits for money damages where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818,

102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (citations and footnote omitted). Thus, defendant officials are entitled to qualified immunity if (1) their actions did not violate clearly established law, or (2) it was objectively reasonable for them to believe that their actions did not violate such law. *See Salim v. Proulx,* 93 F.3d 86, 89 (2d Cir. 1996) (citations omitted). To determine whether a right is clearly established, the court must consider "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the [Second Circuit] support[s] the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991) (citation omitted). " 'Where the circumstances are in dispute, and contrasting accounts present factual issues as to ... [the] reasonableness [of a defendant's actions], a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity.' " *Curry v. City of Syracuse,* 316 F.3d 324, 334 (2d Cir.2003) (quoting *Mickle,* 297 F.3d at 122 (internal citations and quotation marks omitted)).

■ Following the Supreme Court's decision in *Helling,* the Second Circuit held that "it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm to the inmate's health." *Warren v. Keane,* 196 F.3d 330, 333 (2d Cir. 1999) (citation omitted). Thus, deliberate indifference to an inmate's exposure to an

---

harassment without injury, " 'although indefensible and unprofessional,' " do not rise to the level of constitutional violations (quotation and other citation omitted)).

**5.** Magistrate Judge DiBianco did not address Defendant's argument regarding qualified immunity because he found that Plaintiff had failed to meet the objective prong of his Eighth Amendment claim.

unreasonable level of ETS violates "clearly established" law. *See id.; see also Atkinson v. Taylor,* 316 F.3d 257, 268 (3d Cir. 2003) (holding that the right of a prisoner not to be subjected to unreasonable risk of injury from ETS was clearly established).

■ Since exposing Plaintiff to an unreasonable level of ETS would violate a "clearly established" right, the issue of qualified immunity turns on whether it was objectively reasonable for Defendant to believe that his actions did not violate that right. Viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court concludes that there exists an issue of fact as to whether reasonable correctional officers in a similar situation could disagree that the actions which allegedly occurred violated Plaintiff's right to be free from involuntary exposure to unreasonable levels of ETS, particularly given that the no-smoking policy at the Auburn Correctional Facility evidences both the danger that ETS poses and Defendant's knowledge of that danger. Accordingly, the Court denies Defendant's motion for summary judgment based upon the defense of qualified immunity.[6]

## III. CONCLUSION

After carefully considering Magistrate Judge DiBianco's Report–Recommendation, Plaintiff's objections, the relevant parts of the record, and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Magistrate Judge Di-Bianco's Report–Recommendation dated December 10, 2002 is **ADOPTED IN PART AND REJECTED IN PART;** and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's First Amendment retaliation claim; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** in all other respects; and the Court further

**ORDERS** that Plaintiff's cross-motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**

## REPORT–RECOMMENDATION

DI BIANCO, United States Magistrate Judge.

This matter has been referred to the undersigned for Report and Recommendation by the Honorable Frederick J. Scullin, Jr., Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

In this civil rights complaint, plaintiff alleges that defendant smoked cigarettes while working at Auburn's Media Center in violation of the facility's indoor non-smoking policy. Plaintiff alleges that defendant threatened to retaliate against all library workers if plaintiff did not withdraw his grievance against defendant.

Plaintiff seeks and substantial monetary relief.

Presently before the court is defendants' motion for summary judgment pursuant to FED. R. CIV. P. 56. (Docket # 20). Plaintiff has filed a cross-motion for the same relief. (Docket # 27). For the following

---

**6.** Magistrate Judge DiBianco recommended that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims in light of his recommendation that the Court grant Defendant's motion for summary judgment with respect to Plaintiff's federal claims. Since the Court disagrees with Magistrate Judge DiBianco's conclusion with respect to Plaintiff's Eighth Amendment claim, the Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

reasons, this court agrees with defendant and will recommend granting his motion.

## DISCUSSION

### 1. *Summary Judgment*

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990) (citations omitted). "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id.* However, when the moving party has met its burden, the non-moving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id.*

### 2. *Facts*

Plaintiff alleges that he suffers from chronic asthma, and because of this ailment, he alleges that he can not tolerate being near individuals who are smoking. Plaintiff alleges that defendant smokes in the law library which is contained in the Media Center at Auburn Correctional Facility. Plaintiff states that the Media Center contains the law library, general library, chapel/counseling offices, gymnasium entrance, chapel/church, and is also the site of the inmate telephone program. Complaint ¶ 5. Plaintiff states that defendant's smoking in this area is contrary to the facility's no smoking policy. Plaintiff claims that he has asked defendant to stop many times, but that defendant refused to do so. Complaint ¶¶ 8–9.

Plaintiff claims that he suffered sinus and breathing complications, headaches, nausea, and dizziness each time he encountered defendant smoking. Complaint ¶ 10. Plaintiff claims that he suffered a severe asthma attack on August 12, 2000 due to defendant's smoking. Plaintiff also alleges that on November 17, 2000, the defendant was again smoking in the Media Center area. Complaint ¶ 14. Plaintiff claims that he asked defendant to stop, but the defendant refused. Complaint ¶ 15. Plaintiff alleges that these actions by defendant violated the Eighth and Fourteenth Amendments to the United States Constitution as well as New York State law and facility regulations.

Plaintiff states that after the November 17, 2000 incident, he filed a grievance against defendant. Complaint ¶ 16. Plaintiff claims that defendant threatened to retaliate against every law library worker if plaintiff did not withdraw his grievance. Complaint ¶ 17. Plaintiff also claims that this "threat" of retaliation created a "hostile work environment" for plaintiff because every time plaintiff would attend the law library to conduct his "legal endeavors" the law library clerk and other inmates "alienated and treated plaintiff indifferently [sic]", causing plaintiff stress and depression as well as creating a lack of communication with the other inmates. Complaint ¶ 18. Plaintiff alleges that this conduct was in violation of the First, Eighth, and Fourteenth Amendments of the United States Constitution.

### 3. *Eighth Amendment*

Plaintiff claims that the defendant's actions violate the Eighth Amendment. In order to establish an Eighth Amendment violation, the plaintiff must

show objectively, that he was incarcerated under conditions posing a substantial risk of serious harm, and subjectively, that prison officials acted with deliberate indifference to that risk and the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The plaintiff must show that prison officials **actually knew of and disregarded** an excessive risk of harm to the inmate's health and safety. *Id.* at 837, 114 S.Ct. 1970. The defendant must be aware of the facts from which the inference can be drawn that a substantial risk of serious harm exists and the defendant must also draw that inference. *Id.* Plaintiff's injury must have been "sufficiently serious" to deny him the "minimal civilized measure of life's necessities." *Id.* at 834, 114 S.Ct. 1970.

In the case of environmental tobacco smoke, with respect to the objective factor, plaintiff must show that he was exposed to unreasonably high levels of smoke and that the resulting risk is not one which today's society chooses to tolerate. *Helling v. McKinney*, 509 U.S. 25, 35–36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). The subjective factor of deliberate indifference is determined in "light of the prison authorities' current attitudes and conduct." *Id.* at 36, 113 S.Ct. 2475. Although *Helling* stands for the proposition that high levels of environmental tobacco smoke *could* violate the Eighth Amendment, the case by no means holds that every case of a plaintiff's exposure to environmental tobacco smoke rises to the level of a constitutional violation. The court specifically remanded to provide plaintiff an opportunity to "prove his allegations, which will require him to prove both the subjective and objective elements" of an Eighth Amendment claim. *Id.* at 35, 113 S.Ct. 2475.

Plaintiff in this case has alleged nothing to infer that he was exposed to unreasonably high levels of cigarette smoke. In *Helling*, plaintiff's cell-mate was a five-pack-a-day smoker. *Id.* In *LaCroix v. Williams*, 97–CV–0790, 2000 WL 1375737, *3, 2000 U.S. Dist. LEXIS 13911, *10–11 (W.D.N.Y. Sept. 21, 2001), the court dismissed an action brought by a plaintiff who complained that he was housed in a twenty two man dormitory, the other twenty one men smoked cigarettes, and the dormitory room was not properly ventilated. Plaintiff had requested a transfer to a non-smoking housing area, but was refused by facility officials. At the time, the facility policy was that a transfer would be afforded only for medical necessity, and smoking was prohibited in public areas and patient care areas, but permitted in the inmates living quarters. *Id.*, 2000 WL 1375737, at *2, 2000 U.S. Dist. LEXIS 13911, at *7.

The court found plaintiff's allegations "patently insufficient" because the medical evidence demonstrated that there was no objective support for plaintiff's complaints. *Id.*, 2000 WL 1375737, at *3, 2000 U.S. Dist. LEXIS 13911, at *10. Plaintiff had claimed that the smoke caused him various illnesses, including sinus problems, ringing in his ears, sore glands, loss of balance, and hearing loss. *Id.* LaCroix's claims were investigated by the Inmate Grievance Resolution Committee at the administrative level, and it was determined that plaintiff's symptoms were unrelated to the purported intolerance to smoke. *Id.*

In this case, plaintiff claims even less exposure than either plaintiff in the above cases. Plaintiff alleges that defendant Smith smoked when he was assigned to the Media Center. Defendant has submitted various affidavits with his motion for summary judgment. The affidavit of defendant Smith states that during 2000, he was assigned to the gymnasium door post at Auburn's Media Center. Smith Aff. ¶ 3 (docket # 23). His shift began at 12:15

p.m. and ended at 8:30 p.m. From 1:00 p.m. until 3:00 p.m., he was stationed at the gymnasium door with another officer. *Id.* For those two hours, he was assigned strictly to the door and did not patrol the Media Center. *Id.*

From 3:00 p.m. to 4:30 p.m., defendant Smith states that he was responsible for monitoring prisoners during counselor "call-outs," and after the counseling center, chapel, and other areas of the Media Center closed at 4:45 p.m., defendant's duties involved monitoring portions of the Media Center that remained open. *Id.* The law library was open from 7:00 p.m. until 9:30 p.m., however, defendant's shift ended at 8:30 p.m. *Id.* Defendant states that he typically worked a forty hour week, four days on and two days off. Smith Aff. ¶ 4. Defendant states that he is a smoker, but does not smoke in the buildings at Auburn. Smith Aff. ¶ 5. Defendant denies that he ever smoked cigarettes anywhere in the Media Center and denies that he ever threatened to retaliate against the law library workers if plaintiff did not withdraw his grievance. Smith Aff. ¶¶ 6–7.

Defendant has also submitted the affidavit of Joseph Vasile, a corrections sergeant at Auburn. (Docket # 22). Sergeant Vasile states that part of his duties as a corrections sergeant involve being in the Media Center at Auburn. Vasile Aff. ¶ 3. Sergeant Vasile states that he has seen Officer Smith at his post at the Media Center and has never observed him smoking there. *Id.* Sergeant Vasile also states that Auburn is currently a non-smoking facility as the result of a four-phase program. Vasile Aff. ¶ 4. Phase four of the program began July 2000. *Id.* Smoking is now allowed only outside the facility. *Id.* Sergeant Vasile also states that he enforces the non-smoking policy. *Id.*

Sergeant Vasile states that the Media Center is made up of a variety of offices and affords various services to the inmates. Vasile Aff. ¶ 6. The Media Center contains the chapel and chaplain's offices, the law library, counseling offices, and the prison telephone bank. *Id.* Sergeant Vasile states that the distance from the gymnasium door where defendant Smith was stationed to the library door is ten (10) feet. *Id.* Additionally, the distance from the library door to the library officer's desk is another twelve (12) feet. *Id.* The sergeant further states that no inmates are allowed to sit closer to the library door than the library officer's desk. *Id.* The inmates are allowed to use the law library facility from Sunday through Saturday between 1:30 p.m. and 4:30 p.m. and 7:00 p.m. to 9:30 p.m. Vasile Aff. ¶ 7.

Sergeant Vasile interviewed plaintiff and defendant Smith regarding plaintiff's November 17, 2000 grievance against defendant Smith. Vasile Aff. ¶ 8. Sergeant Vasile concluded in a memorandum that there was no evidence to substantiate plaintiff's allegations that defendant Smith was smoking in the Media Center at Auburn. Vasile Aff. ¶ 8 and Ex. A.

Finally, defendant has submitted the affidavit of Laurence M. Cheney, Liaison Officer at Auburn Correctional Facility. (Docket # 21). Officer Cheney states that plaintiff was transferred to Auburn October 2, 1998 and remained there until March 5, 2002. Cheney Aff. ¶ 3 and Ex. A (plaintiff's transfer history). Officer Cheney also states that plaintiff was disciplined several times while at Auburn, resulting in periods of time during which he was confined to his cell and would not have had the opportunity to attend the Media Center. Cheney Aff. ¶ 4.

Plaintiff was confined to his cell from December 31, 1999 until February 29, 2000. *Id.* He was also confined to his cell from August 31, 2000 until September 15, 2000 and from October 18, 2000 until No-

vember 17, 2000. *Id.* The court notes that November 17 was the date of the second incident listed in plaintiff's complaint, after which he filed his grievance against defendant Smith. However, plaintiff clearly had not been in the Media Center for approximately one month prior to this incident because he was confined to his cell. The court also notes that shortly after the first incident cited by plaintiff (August 12, 2000), he was confined to his cell for approximately two weeks until September 15. Thus, for approximately three and one half months in the year 2000, plaintiff did not go to the Media Center or see defendant Smith at work in that area.

Officer Cheney also states that in July of 1999, the Department of Correctional Services (DOCS) began a four phase plan to eliminate indoor smoking in all correctional facilities by January 1, 2001. Cheney Aff. ¶ 6. Phase three began in July of 2000, and at the time of Officer Cheney's affidavit, the policy had been completely implemented, and there was no longer smoking allowed anywhere indoors at Auburn. *Id.* Officer Cheney also points out that notwithstanding the above plan, there were areas of the facility in which smoking had been prohibited since 1997. *Id.* One of these areas was the law library. Cheney Aff. ¶ 7 and Ex. D. Finally, Officer Cheney states that a study in 1998 and one in 2001 showed that Auburn Correctional Facility met New York State standards for air flow, light, noise, and temperature. Cheney Aff. ¶ 8 and Ex. E, F.

Plaintiff alleges one instance in which he states that he suffered an asthma attack because of defendant's alleged smoking. Plaintiff's medical records show that on August 12, 2000, he was treated at the infirmary at 1:35 p.m. for asthma-related wheezing and coughing. Defendant's Ex. B (docket # 25). Plaintiff alleges that he was "in attendance in the facility's law library" when he suffered the asthma attack. Complaint ¶ 12.

The law library did not open until 1:30 p.m. Vasile Aff. ¶ 7. At 1:30 p.m. defendant Smith was stationed at the gymnasium door and could not leave his post unless relieved by another officer. Smith Aff. ¶ 3, Vasile Aff. ¶ 5. As stated above, the gymnasium door is approximately 22 feet from the nearest inmate in the law library. Vasile Aff. ¶ 6. Thus, given the above, even assuming that defendant Smith was smoking at the time, the plaintiff's possible exposure was less than five minutes if he was already in the law library since the law library opened at 1:30 p.m., and plaintiff was already in the infirmary at 1:35 p.m. This court does not find, based on the established facts, that plaintiff has shown that he was exposed "unreasonably high levels" of cigarette smoke.[1] Thus, plaintiff's Eighth Amendment claim relating to environmental tobacco smoke exposure must fail.

Plaintiff includes with his motion papers a prior case of his, filed in the Northern District of New York in which he claims unconstitutionally high exposure to tobacco smoke. *Gill v. Greene*, 00–CV–983. In *Gill v. Greene*, Magistrate Judge David Peebles recommended denial of defendant's motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), declining to find that plaintiff failed state a claim. Plaintiff's Ex. B.

First, the court would point out that *Gill* was a motion to dismiss, not one for summary judgment, and the court was simply determining whether plaintiff had stated a

---

1. This court is in *no way* finding that defendant Smith did smoke at any of the times alleged by plaintiff. The court is simply finding that plaintiff's own facts do not show that he was exposed to an unreasonably high level of environmental tobacco smoke.

claim based on the complaint alone. Second, the facts in *Gill* are very different from the facts in this case. In *Gill,* plaintiff claimed that he was in a van for two and one half hours with defendant allegedly chain-smoking in close proximity to plaintiff. *Id.* Plaintiff also claimed that defendant would not allow plaintiff access to the medication for his asthma. Magistrate Judge Peebles went no further than to state that **based on the four corners of the complaint,** it could not be found that plaintiff had failed to state a claim, while recognizing that "plaintiff's claims may ultimately fail for lack of evidence." *Id.* Report–Recommendation of Dec. 3, 2001 at 18. Thus, plaintiff's prior case is distinguishable from this action.

### 4. *Retaliation*

■ Retaliation is a viable claim when plaintiff alleges that administrative actions were taken in retaliation for the exercise of a constitutional right. *See Franco v. Kelly,* 854 F.2d 584, 588–90 (2d Cir.1988). The Second Circuit has revisited the issue of retaliation claims. *Dawes v. Walker,* 239 F.3d 489 (2d Cir.2001). In *Dawes,* the court stated that courts must approach claims of retaliation "with skepticism and particular care." *Id.* at 491 (citing *Flaherty v. Coughlin,* 713 F.2d 10, 13 (2d Cir. 1983)).

The court in *Dawes* stated that in order to survive summary dismissal, the plaintiff must advance "non-conclusory" allegations establishing

(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

*Id.* at 492 (citations omitted). Additionally, the retaliatory action must be sufficient to "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional right." *Id.* at 493. Conclusory allegations, however, are insufficient to state a claim for relief under section 1983. *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir.1987).

Plaintiff alleges that defendant Smith "threatened" to retaliate against all library workers if plaintiff[2] did not withdraw his grievance. Plaintiff states that this alleged "threat" caused other inmates to treat plaintiff "indifferently." Plaintiff did not, however, withdraw his grievance, and it is clear that the grievance was thoroughly investigated and appealed to the highest level. Thus, it is clear that whatever "threats" were allegedly made, they did not deter plaintiff from exercising his First Amendment rights.[3]

■ It is also well settled that verbal harassment itself does not rise to the level of a constitutional violation. Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations. *See Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir.1986); *Ramirez v. Holmes,* 921 F.Supp. 204, 210 (S.D.N.Y. 1996)(threats or verbal harassment without injury, "although indefensible and un-

---

**2.** It does not appear that plaintiff is a library worker, so plaintiff seems to claim that defendant Smith was threatening other inmates if plaintiff did not withdraw his grievance.

**3.** To the extent that plaintiff is attempting to make an Eighth Amendment claim regarding the effect of defendant's alleged threat on other inmates and any possible danger to

plaintiff's safety, the claim must also be dismissed. It has been held that "fear of assault does not constitute a 'sufficiently serious' injury to state a claim under the Eighth Amendment." *Cruz v. Hillman,* 01 Civ. 4169, 2002 WL 31045864, *8, 2002 U.S. Dist. LEXIS 17705, *27 (S.D.N.Y. May 16, 2002)(citing *Dawes v. Walker,* 239 F.3d at 494).

professional," do not rise to the level of constitutional violations). Thus, even if defendant Smith had made a verbal threat, this would not, without more, rise to the level of a constitutional violation.

### 5. State Law

■ Plaintiff also alleges that defendant has violated New York State law as well as facility regulations that have been implemented prohibiting smoking in the facility. Because this court has recommended dismissal of plaintiff's constitutional claims, this court should not exercise jurisdiction over any State law claims plaintiff may be attempting to raise. First, a violation of State law or regulations does not automatically rise to the level of a constitutional violation. *See Young v. County of Fulton*, 160 F.3d 899, 902 (2d Cir.1998)(violation of state law is not the "benchmark" for determining whether a constitutional violation has occurred); *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir.1995)(state law violation does not necessarily rise to the level of a constitutional violation).

To the extent that the court could have exercised supplemental jurisdiction over any State law claims, the court should decline to exercise that jurisdiction based upon the fact that all claims over which the court had original jurisdiction would be dismissed. The statute authorizing supplemental jurisdiction specifically includes this basis as one for declining jurisdiction over state law claims. *See* 28 U.S.C. § 1367(c)(3).

**WHEREFORE,** based on the findings above, it is

**RECOMMENDED,** that defendant's motion for summary judgment (docket # 20) be **GRANTED,** and the complaint DISMISSED IN ITS **ENTIRETY,** and it is further

**RECOMMENDED,** that plaintiff's cross-motion for summary judgment (docket # 27) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir.1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 6(a), 6(e), 72.