Vince **WARREN**, Tyrone Benton, John Murray, Plaintiffs,

v.

John P. **KEANE**, Superintendent, Deputy Superintendent Charles Greiner, Deputy Superintendent Bryant Kehn, Fire and Safety Officer Noel Morris, Thomas A. Coughlin 3rd Commissioner of Corrections and Officer J. Burt.[1] Defendants.

No. 93 Civ. 6018 (JES).

United States District Court, S.D. New York.

Sept. 10, 1996.

---

1. The caption, which contains certain typographical errors, appears herein as it does in the Amended Complaint. In addition, defendant Brent Kehn is improperly named as Bryant Kehn

in the caption. Plaintiffs also label their Amended Complaint as a "CLASS ACTION," although no further reference is made to seeking such relief.

James C. Neville, New York City, for Plaintiffs.

Dennis C. Vacco, Attorney General of the State of New York, New York City (Michael S. Popkin, Assistant Attorney General, of counsel), for Defendants.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

Pursuant to 42 U.S.C. § 1983, plaintiffs Vince Warren, Tyrone Benton, and John Murray (together "plaintiffs") allege that defendants John P. Keane, Charles Greiner, Brent Kehn, Noel Morris, Thomas A. Coughlin III, and J. Burt (together "defendants") violated their Eighth Amendment rights by subjecting them to unreasonably dangerous levels of environmental tobacco smoke ("ETS" or "second hand smoke"). Pursuant to Federal Rule of Civil Procedure 56(c), defendants move for summary judgment. For the reasons that follow, defendants' motion is denied.

## BACKGROUND

Plaintiffs are New York State prison inmates in the custody of the New York State Department of Correction Services ("DOCS") who are, or have at one time been, confined at Ossining State Correctional Facility ("Sing Sing"). *See* Defendants' Statement Pursuant to Local Rule 3(g) dated May 10, 1996 ("Defts. Rule 3(g) Stmt.") ¶¶ 1–3. All have been housed for at least part of their confinement in Cell Block A and complain of smoke-related discomfort and other maladies. *Id.* ¶¶ 9, 13–15.

Defendants are State of New York prison officials. Thomas Coughlin III was Commissioner of DOCS at the time the complaint

was filed but has since retired from that position. Defts.Rule 3(g) Stmt. ¶ 5. John Keane is Superintendent of Sing Sing. *Id.* ¶ 4. Charles Greiner was Deputy Superintendent for Security at Sing Sing at the time the complaint was filed and has recently been promoted to First Deputy Superintendent. *Id.* ¶ 6. Brent Kehn is Deputy Superintendent for Programs at Sing Sing. *Id.* ¶ 7. Fire and Safety Officer Noel Morris and Correction Officer J. Burt were DOCS employees at Sing Sing during the relevant time period. *Id.* ¶ 8.

Plaintiffs allege that they have been subjected to ETS in smoking and no smoking areas throughout Sing Sing and within their own cells in Cell Block A which, when magnified by inadequate ventilation and large numbers of inmates who smoke, may cause health problems and/or lead to their early deaths.[2] *See* Amended Complaint ("Amend.Compl.") ¶¶ 12, 20. Plaintiffs assert that in areas such as the chapel, auditorium, gym and gallery recreational area they must hold wet handkerchiefs over their noses and mouths to avert the constant barrage of cigarette smoke that overwhelms them. *Id.* ¶ 21. Warren, who has been confined in Cell Block A for the past five years, indicates that he suffers from sinus problems, headaches, dizziness, asthma, and hepatitis B and C. *See* Defts.Rule 3(g) Stmt. ¶¶ 1, 13. Benton, who was confined in Cell Block A from September, 1989, until December, 1993, states that he suffered from nausea, headaches, and shortness of breath. *Id.* ¶¶ 2, 14. Murray, who also was confined in Cell Block A for five years but has since been relocated to a cell with a window, suffered from dizziness, shortness of breath, chest pains, and tuberculosis.[3] *Id.* ¶¶ 3, 15, 29.

Pursuant to an established DOCS policy, inmates are permitted to smoke in their own cells and in a recreation area near Cell Block A. Defts.Rule 3(g) Stmt. ¶ 10. DOCS bases

---

**2.** Defendants admit in their Local Rule 3(g) Statement that plaintiffs were often exposed to ETS while residing in Cell Block A, which is an older prison housing block where a number of tiers of cells are stacked on top of each other. *See* Defts.Rule 3(g) Stmt. ¶ 9.

**3.** Plaintiffs do not challenge the adequacy of any medical treatment which they received.

its policy on an interpretation of New York Public Health law § 1399–n *et seq.*, which regulates smoking in certain public areas but does not regulate private homes or residences. *Id.* ¶ 11; N.Y.Pub.Health Law § 1399(n)–(x). DOCS considers an inmate's housing cell to be analogous to a private residence, and allows inmates to smoke there. *See* Defts. Rule 3(g) Stmt. ¶ 11. In addition, DOCS is concerned that an entire prohibition on prison smoking might lead to inmate unrest. *Id.* ¶ 12. Although DOCS prohibits smoking in the gym, class room, mess hall, library, and chapel, *id.* ¶ 16, plaintiffs assert that DOCS' policy is not adequately enforced against inmates or guards. *See* Plaintiffs' Statement Pursuant to Local Rule 3(g) dated June 7, 1996 ("Pltfs. Rule 3(g) Stmt") ¶¶ 11–13.

In or about June, 1993, Warren filed a grievance addressed at the prevalence of inmate smoking in the prison gym. Defts.Rule 3(g) Stmt. ¶ 17. Plaintiffs also sent a petition to, *inter alia*, Keane, the Governor and Coughlin concerning their exposure to second hand smoke in various areas at Sing Sing. *Id.* ¶ 18; Defendants' Notice of Motion dated May 10, 1996, Exh. 3. Coughlin responded by writing to Warren. *Id.* Keane and Sing Sing's executive staff responded by posting "no smoking" signs in the gym and increasing enforcement of DOCS's no smoking policy in that area. *See* Defts.Rule 3(g) Stmt. ¶ 18.

In or about July, 1993, Warren filed a second grievance complaining about smoking in the cell blocks and poor ventilation. Defts.Rule 3(g) Stmt. ¶ 19. Murray also filed a grievance about a single incident of an officer smoking in the gym. *Id.* ¶ 20. In

response, a sergeant investigated Murray's complaint about the officer and found no one smoking there. *Id.*

On August 25, 1993, plaintiffs, proceeding *pro se*,[4] filed the instant action alleging that defendants violated their Eighth Amendment rights by subjecting them to unreasonably dangerous levels of ETS. On November 14, 1995, plaintiffs filed an amended complaint addressing in more detail these claims and seeking compensatory damages of $2,000,000 against each defendant, punitive damages of no less than $50,000 against each defendant, attorneys fees and such other relief as plaintiffs may be entitled to.[5]

In June, 1994, after the instant action was filed, Warren complained to Officer Morris about inmates smoking in the common areas of the cell block. Defts.Rule 3(g) Stmt. ¶ 22. Morris responded by explaining to Warren that the Superintendent's policy was to enforce current no smoking rules, but not to restrict smoking in other areas of the facility. *Id.* Dissatisfied with Morris' explanation, Warren filed another grievance and received no response. *Id.* ¶ 23. In January, 1995, Warren wrote to Keane regarding smoking in the gym. *Id.* ¶ 24. Keane responded in writing. *Id.* In July, 1995, Warren wrote to Keane regarding a correction officer's refusal to stop smoking as Warren entered the chapel. *Id.* ¶ 25. Defendants assert that since this lawsuit was filed, Sing Sing's enforcement of smoking restrictions has become more rigorous, with an increasing number of disciplinary warnings and citations being given to inmates for policy violations. *Id.* ¶ 26.

On May 10, 1996, defendants moved for summary judgment arguing that the condi-

---

4. On February 16, 1995, the Court granted plaintiffs' application for appointment of counsel. On January 22, 1996, counsel filed a notice of appearance on plaintiffs' behalf and has represented plaintiffs during the instant motion.

5. Because plaintiffs filed their amended complaint *pro se*, the Court liberally construes the complaint also to be seeking injunctive relief. *See Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972). Warren indicates that in a July, 1993 grievance, he requested to be transferred to a cell with a win-

dow in the 7–Block or to be transferred to the Eastern Correctional Facility which has windows. *See* Pltfs' Rule 3(g) Stmt. ¶ 6. The Grievance Committee responded that his request was outside their purview. *Id.* It should be noted that at Warren's deposition, he and his co-plaintiffs declined to discuss the remedy of transfer to a more well-ventilated location, believing that defendants were offering such a transfer as retaliation for filing the instant action. *See* Defendants' Memorandum of Law in Support of Motion for Summary Judgment at 16 n. 4. Benton is no longer at Sing Sing and Murray has been moved to a cell with a window. *Id.*

tions plaintiffs describe at Sing Sing do not amount to an Eighth Amendment violation and that defendants, in any event, are entitled to qualified immunity. Plaintiffs argue that their exposure to ETS does constitute an Eighth Amendment violation, that defendants are not entitled to qualified immunity, and that in any event defendants' motion should be denied to afford plaintiffs an opportunity to complete more discovery.

## DISCUSSION

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–52, 106 S.Ct. 2505, 2509–12, 91 L.Ed.2d 202 (1986) (discussing standards governing motion for summary judgment); *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986).

It is well established that the conditions under which a prisoner is confined are subject to scrutiny under the Eighth Amendment. *See Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481–82, 125 L.Ed.2d 22 (1993). To succeed in asserting their Eighth Amendment claims, plaintiffs must establish that defendants were deliberately indifferent in exposing them to levels of second hand smoke that pose an "unreasonable risk of serious damage to [their] future health." *Id.* Proving an Eighth Amendment claim contains both an objective and a subjective component. *See Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). For a defendant to be found liable under the Eighth Amendment, that defendant must have been both aware of facts from which an inference could be drawn that a substantial risk of serious harm exists,

and must have also actually drawn that inference. *Id.*

In *Helling v. McKinney,* 509 U.S. 25, 35, 113 S.Ct. 2475, 2481–82, 125 L.Ed.2d 22 (1993), the Supreme Court established that with respect to the objective factor, plaintiffs must show that they are being exposed to unreasonably high levels of ETS. Determining whether conditions of confinement violate the Eighth Amendment requires more than a scientific and statistical inquiry into the seriousness of the potential harm and the likelihood that such injury to health will actually be caused by exposure to ETS. *Id.* The Court must also assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk. *Id.*

In this case, defendants' motion must be denied because the evidence, when viewed in the light most favorable to plaintiffs and with all permissible inferences drawn in their favor, affords a rational basis for a factfinder to conclude that defendants confinement exposed them to unreasonably dangerous levels of ETS and violated contemporary standards of decency. Plaintiffs' allegations, if believed, overwhelmingly describe a prison environment permeated with smoke resulting from, *inter alia,* under-enforcement of inadequate smoking rules, overcrowding of inmates and poor ventilation.

Furthermore, defendants have failed to demonstrate an absence of genuine issue of fact as to the subjective component of deliberate indifference. In their Memorandum of Law in Response to Defendants' Motion for Summary Judgment, plaintiffs specifically reference a 1986 report by the United States Surgeon General warning of the dangers of ETS.[6] A rational fact-finder could infer from such a report, which would be admissible as an exception to the hearsay rule, that defendants were on notice as to the dangers of ETS. *See* Fed.R.Evid. 803. Indeed, a ra-

---

**6.** Specifically, this report indicated that ETS caused diseases such as lung cancer in healthy non-smokers. Plaintiffs further proffered that the National Research Council estimates that be-

tween 2,490 and 5,160 non-smokers will die each year because of ETS exposure. *See* Plaintiff's Memorandum of Law in Response to Defendants' Motion for Summary Judgment at 13.' In 1993,

**306**

tional fact finder could further accept the smoking policy with respect to problem areas at Sing Sing, to some extent, as an admission by defendants as both to the dangerousness of ETS and their awareness of such danger.

■ Nor are defendants entitled to the affirmative defense of qualified immunity. To establish the defense of qualified immunity, defendants must show either that their "conduct did not violate 'clearly established rights' of which a reasonable person would have known, or that it was 'objectively reasonable' to believe that [their] acts did not violate these clearly established rights." *Finnegan v. Fountain,* 915 F.2d 817, 823 (2d Cir.1990); *see Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). Three factors are pertinent in determining whether a legal rule was "clearly established" at the time of the challenged action: (1) whether the right in question was defined with "reasonable specificity;" (2) whether the decisional law of the Supreme Court and the Second Circuit supports the existence of the right in question; and (3) whether, under preexisting law, a reasonable defendant official would have understood that his or her acts were unlawful. *See Soares v. State of Connecticut,* 8 F.3d 917, 922 (2d Cir.1993).

Defendants argue that prior to the Supreme Court's decision in *Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), on June 18, 1993, no controlling case law in this Circuit or the Supreme Court held that a prison inmate's exposure to second-hand smoke could state an Eighth Amendment claim. They further argue that after *Helling,* it was objectively reasonable for them to believe that their actions did not and do not violate *Helling.*

■ Viewing the evidence in the light most favorable to plaintiffs and drawing all inferences favorable to plaintiffs, the Court cannot, based upon a full review of the record as it now stands, find that as a matter of law defendants conduct did not violate clearly established rights of which a reasonable person would have known or that it was objectively reasonable for them to believe that their acts did not violate such clearly established rights. Even prior to *Helling,* the Supreme Court has held that the Eighth Amendment applies where a claim alleges deliberate indifference to inhumane conditions of confinement or deliberate failure to attend to a prisoner's medical needs. *See Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).

■ Defendants Keane, Greiner, Kehn, and Coughlin, as supervisors, are chargeable with knowledge of the conditions at Sing Sing, *see Jemmott v. Coughlin,* 85 F.3d 61, 67–68 (2d Cir.1996), and with knowledge that at least as early as 1986, the date of Surgeon General report, second hand smoke could cause serious health problems. Thus, their failure to remedy such a condition could violate clearly established rights. Moreover, such failure, in light of the numerous commentaries and government reports concerning ETS, cannot be said to be objectively reasonable. Indeed, the smoking policy established at Sing Sing evidences, to some extent, the danger ETS poses and defendants' recognition of that danger. Whether the level of smoke permeating Sing Sing was so severe as to permit that inference is a factual question that cannot be resolved on a motion for summary judgment.

■ Defendants Morris and Burt, similarly, are not entitled to qualified immunity because, although they are not supervisory officials, they can be chargeable with failure to enforce prison polices regarding smoking which were already in effect. Thus, adjudication of the qualified immunity defense requires the resolution of genuinely disputed questions of fact and defendants' motion must be denied without prejudice to being renewed on a motion for a directed verdict or on a motion for judgment notwithstanding the verdict. *See Warren v. Dwyer,* 906 F.2d 70, 74 (2d Cir.1990).

## CONCLUSION

For the reasons stated above, defendants' motion is denied. All parties shall complete

ETS was labeled as a "known carcinogen" by the Environmental Protection Agency. *Id.*

all discovery on or before October 31, 1996, and a pre-trial conference shall be held on October 11, 1996, at 10:30 a.m. in Courtroom 705.

It is **SO ORDERED.**