**Michael R. JOHNSON, Plaintiff,**

v.

**Eddie L. PEARSON, et al., Defendants.**

No. CIV.A. 2:02CV219.

United States District Court,
E.D. Virginia,
Norfolk Division.

March 1, 2004.

Michael R. Johnson, White Deer, PA, pro se.

Noelle L. Shaw–Bell, Philip Carlton Hollowell, Office of the Attorney General, Richmond, VA, Edward Joseph McNelis, III, John David McChesney, Rawls & McNelis PC, Richmond, VA, for defendants.

### MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

This matter comes before the Court upon Eddie Pearson, Lee Givens, Officer

Clinkscales, Avon Quiero, Houston Shiflett, and Rufus Fleming's (collectively "Defendants") Motion for Summary Judgment. Cynthia Stem ("Nurse Stem"), also a named defendant, filed a separate Motion for Summary Judgment against Plaintiff's claims. The Court has considered the memoranda of all parties, and the matter is now ripe for judicial determination without the need of a hearing.

## I. PROCEDURAL AND FACTUAL HISTORY [1]

In 1999, Eddie L. Pearson, the Warden for Sussex II State Prison [2] ("SIISP"), implemented Institutional Operating Procedure ("IOP") 858, "[t]o provide uniform, written procedures for regulating smoking at [SIISP] by inmates, staff, and visitors." *See* Defendants' Motion for Summary Judgment ("Defendants' Motion for SJ"), Enclosure A. The IOP acknowledged the existence of the Virginia Clean Air Act ("VCAA"), but stated that SIISP would comply with the VCAA only where "appropriate or feasible." *Id.* In addition, the IOP recognized that non-smokers should be placed in a non-smoking cell, but assumed no guarantee this mandate would occur. *Id.* In fact, the IOP conceded that "[s]mokers may be housed with a non-smoking partner," and that "security considerations for cell assignments will take priority" over any other factor. *Id.* Pearson signed the IOP on the same page it declared that "[t]he Warden shall hold primary responsibility for ensuring overall compliance with this Institutional Operating Procedure." [3] *Id.*

In or around September 2001, prison officials made SIISP inmates fill out a form and state whether they considered themselves smokers or non-smokers. Complaint, p. 4b. Although Plaintiff filled out the form as a non-smoker, on December 19, 2001, Officer Clinkscales moved Plaintiff from Unit 1C Pod to Unit 4B Pod, and attempted to house him in a double cell with an inmate who smokes. Complaint, p. 4a. Plaintiff informed Officer Clinkscales that he was a non-smoker with a respiratory medical condition, and that he could not tolerate tobacco smoke. *Id.* Officer Clinkscales responded by giving Plaintiff an ultimatum: either go into the cell or be sent to segregation for violating a direct order. *Id.* Plaintiff chose to enter his cell. There, Plaintiff was subjected to being enclosed in his maximum security cell with an "habitual smoker of Black–N–Mild cigars" for 19 hours a day. *Id.*

On January 1, 2002, Plaintiff filed an inmate request seeking guidance on prison policy regarding housing nonsmoking inmates with those who smoke. Complaint, p. 4a. Officer Boone responded to the request by stating that "there is no policy . . . to place nonsmoking [inmates] with [another] nonsmoking [inmate], but [prison officials] like to put a nonsmoking [inmate] with a nonsmoking [inmate] . . . if we have the beds to do so." Complaint, p. 4b.

On January 1, 2002, Plaintiff also submitted a request for medical assistance for his exposure to environmental tobacco smoke ("ETS"), complaining of "mild head-

---

**1.** In light of the fact that all the defendants are requesting the Court grant their motion for summary judgment, all facts and inferences will be drawn in favor of Plaintiff, the non-moving party. *See Odom v. South Carolina Dep't. of Corrections,* 349 F.3d 765, 769 (4th Cir.2003) (*quoting Taylor v. McDuffie,* 155 F.3d 479, 482 (4th Cir.1998)).

**2.** SIISP is part of the Virginia Department of Corrections ("VDOC").

**3.** IOP 858 also provided that "[a]ll Department Heads shall hold secondary responsibility for ensuring compliance with this Institutional Operating Procedure." *See* Motion for SJ, Enclosure A.

aches, difficulty breathing, eye irritation, runny nose, dizziness and occasional stomach cramping," beginning from the time he was forced to live in a double cell with a smoker. Complaint, p. 4a. In addition, on December 29, 2001, Plaintiff submitted a request for medical treatment for his ongoing battle with toe fungus. Nurse Cynthia Stem ("Nurse Stem") decided to see Plaintiff and address both medical complaints during one visit.[4] *See* Brief in opposition to Defendants' Motion for Summary Judgment ("Opposition Brief"), p. 11; August 26, 2002 Attachments ("August Attachments"), Exhibit F. During Plaintiff's visit, Nurse Stem did not believe Plaintiff's physical ailments resulting from ETS exposure required "emergency" medical attention, and did not refer him to the attending physician. Moreover, Nurse Stem told Plaintiff that she has no power to recommend an inmate be moved. *See* Stem's Memorandum in Support of Motion for Summary Judgment ("Stem Motion for Summary Judgment"), ¶¶ 4–5; August Attachments, Exhibit H. Nurse Stem then noted Plaintiff's complaints in his medical records. *See* Stem Motion for Summary Judgment, Plaintiff's Medical Records.

After receiving no medical help to alleviate his conditions, Plaintiff tried the grievance route. On January 4, 2002, Plaintiff filed an informal complaint with Defendant Quiero, requesting that he be moved to a different cell, alleging that exposure to the tobacco smoke aggravated his respiratory condition. Complaint, p. 4a. Plaintiff submitted an informal grievance form on January 8, 2002, stating that he was moved into a cell with a habitual smoker, and that he would like to be moved. In addition, on January 10, 2002, Plaintiff filed a medical request form stating that he still experiences the symptoms previously mentioned, and asked Nurse Stem to make a medical recommendation that he be moved.

According to Plaintiff, the response to these grievances was far from amenable. First, Plaintiff received no written response to his grievance. Instead, on January 10, 2002, Plaintiff was reassigned to Unit 4A, "where troublemakers are primarily housed." p. 4b. In addition, prison officials again housed him in a double cell with a smoker. Plaintiff believes that his reassignment to this pod unit with another smoking cellmate is a form of retaliation for Plaintiff's "vigorous" use the prison system's grievance procedures. Second, Nurse Stem responded to Plaintiff's medical request by declaring that "medical does not recommend movement because of your intolerance to tobacco smoke. You must initiate this yourself." Complaint, p. 4b.; August Attachments, Exhibit H.

Plaintiff continued to file grievances in an attempt to be moved. On January 14, 2002, Plaintiff filed a administrative grievance requesting monetary compensation for his involuntary exposure to ETS 19 hours a day, and prison officials' retaliatory reaction to Plaintiff's use of the grievance procedure. Plaintiff followed up with another inmate cell change request filing on January 15, 2002. On his request form, Plaintiff noted that had a "respiratory condition that is aggravated by tobacco smoke." August Attachments, Exhibit K. However, neither grievance generated favorable news for Plaintiff. In response to Plaintiff's January 15th request, Officer

---

**4.** Defendants strongly contests this statement by Plaintiff. Defendants' allege that medical personnel see an inmate for only one medical complaint per visit. However, as noted, Nurse Stem documented Plaintiff's complaints in his medical record during the same patient visit she addressed Plaintiff's toe fungus. *See* Stem Motion for Summary Judgment, Plaintiff's Medical Records. Moreover, all factual inferences must be view in the most favorable light towards the non-moving party.

Shiflett advised plaintiff that SIISP has a policy which attempts to accommodate nonsmokers, but making such concessions is the last factor considered in housing inmates. Complaint, p. 4b.

Mr. Pearson also formally responded to Plaintiff's two grievances. In a Level I response form, Pearson warned Plaintiff that his past refusal to enter his cell on December 19, 2001, could be viewed as disobedience to a direct order. *See* Defendants' Motion for SJ, Enclosure B. In addition, Pearson denied any implication that Plaintiff's move to Unit 4A constituted a retaliatory response to Plaintiff's filed grievances, but rather simply addressed "institutional needs." *Id.* Finally, Pearson denied Plaintiff's claims that he was seen by medical personnel to address ailments resulting from ETS, and that Plaintiff's only medical request was to examine his toe fungus. *Id.* Pearson then determined Plaintiff's grievance to be unfounded, which the Regional Director ("Mr.Fleming") upheld on appeal. *See* Defendants' Motion for SJ, Enclosure B.

On March 17, 2002, Plaintiff contacted D.C. Prisoner's Legal Services Project, Inc., and informed them of his predicament. Legal Services responded by sending a letter to Warden Pearson informing him of, *inter alia*, Plaintiff's problems stemming from Pearson's refusal to assign him and other inmates nonsmoking cells. August Attachments, Exhibit O. On March 28, 2002, Plaintiff then filed a Title 42 U.S.C. § 1983 complaint with the Court, alleging that SIISP's policy and procedures were being disregarded by prison officials. Plaintiff also claimed that prison officials' decision to place him in a cell with a habitual cigar smoker for 19 hours a day, coupled with their deliberate indifference to his complaints about the risks of present and future medical harms, constituted a violation of his Eighth Amendment

rights. In addition, Plaintiff claimed that medical personnel failed to seriously address his complaints regarding his exposure to ETS, also a violation of the Eighth Amendment. Plaintiff sought monetary, injunctive, and declaratory relief. Less than a week after filing his § 1983 claim, prison officials transferred custody of Plaintiff to D.C. authorities.

After being transferred, Plaintiff filed an amended complaint on September 13, 2002. All defendants named in the complaint, other than Nurse Stem, filed a motion for summary judgment on July 18, 2003. Nurse Stem filed her own Motion for Summary Judgment on September 22, 2003. Plaintiff responded to both motions on October 23, 2003. The Court has considered the memoranda filed by the parties, and the matter is now ripe for judicial determination.

## II.  LEGAL STANDARDS

### A.  Rule 56(c) of FED.R.CIV.P.

Defendants and Nurse Stem requests summary judgment on Plaintiff's claims. Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the Court must view the facts and inferences to be drawn from the facts in the light most favorable to the nonmoving party. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A party opposing a summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at

586, 106 S.Ct. 1348. A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find in favor of the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. To defeat summary judgment, the non-moving party must go beyond the plead-ings with affidavits, depositions, interroga-tories, or other evidence to show that there is a genuine issue for trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment will be granted "against a party who fails to make a show-ing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548.

## B. Qualified Immunity

Defendants claim they are entitled to qualified immunity. Qualified immunity protects government officials from civil damages in a § 1983 action "insofar as their conduct does not violate clearly es-tablished statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *see Jones v. Buchanan,* 325 F.3d 520, 531 (4th Cir.2003)(declaring that the "qualified immunity operates to ensure that before [federal officials] are subjected to a suit, officers are on notice their con-duct is unlawful.")(internal quotes and cita-tions omitted); *Pinder v. Johnson,* 54 F.3d 1169, 1173 (4th Cir.1995) (*en banc*). In determining the applicability of a qualified immunity defense, the court examines the case facts through a two-step analysis. First, the court must identify "whether, taken in the light most favorable to the party asserting the injury, the facts al-leged show that the officer's conduct vio-lated a constitutional right." *See Odom v. South Carolina Dep't. of Corrections,* 349

F.3d 765, 769 (4th Cir.2003)(internal quotes and citations omitted); *see also Anderson v. Creighton,* 483 U.S. 635, 639, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Taylor v. Waters,* 81 F.3d 429, 433 (4th Cir.1996). If Plaintiff's constitutional rights were in fact infringed upon by the defendants, the court must then consider whether, at the time of the claimed viola-tion, those rights were "clearly established in the specific context of the case." *See Odom,* 349 F.3d at 769 (*quoting Figg v. Schroeder,* 312 F.3d 625, 635 (4th Cir. 2002)). If Plaintiff's rights were not clear-ly established, "the qualified immunity doctrine still provides a defendant officer with immunity from suit." *Jones,* 325 F.3d at 526–527. If Plaintiff's rights are estab-lished, the Court must deny summary judgment. *Id.*

However, even if the Court finds that Defendants and Nurse Stem should re-ceive qualified immunity, such protection does not protect them against all of Plain-tiff's sources of remedy. Qualified immu-nity only protects defendants from being sued for monetary damages. *See Harlow,* 457 U.S. at 818, 102 S.Ct. 2727 (stating that qualified immunity only protects offi-cials against civil damages). It does not protect the same individuals from Plain-tiff's requests for injunctive and declarato-ry relief.

## C. Consideration of *Pro Se* Pleadings

Plaintiff has filed this complaint *pro se.* While the Court must liberally construe a *pro se* complaint, *see Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and a *pro se* complaint is sub-ject to "less stringent standards than for-mal pleadings drafted by lawyers," *see Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), it is not necessary that the Court guess the intent of *pro se* parties. "Principles requiring

generous construction of *pro se* complaints are not … without limits" and our precedent does not require courts "to construct full blown claims from sentence fragments." *See Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir.1985).

Here, Plaintiff filed an amended complaint. However, Plaintiff did not intend for his amended complaint to supplant the original complaint; rather, Plaintiff sought to "significantly state his claims" with more clarity. *See* Amended Complaint, p. 1. Therefore, the Court will construe both complaints together as forming one complaint. In addition, on August 26, 2002, Plaintiff submitted all his medical and grievance forms separate from his complaints. *See* August Attachments. These should have been included as attachments to either the original or amended complaint. However, in light of Plaintiff's *pro se* representation, the Court will consider the attachments as part of the combined complaint. In making its decision, the Court considered that Plaintiff filed the August Attachments a year before any of the defendants filed an answer or motion, removing any claim of prejudice.

## III. ANALYSIS

### A. Exhaustion of Administrative Remedies.

Defendants request the Court dismiss Plaintiff's allegations because Defendants believe that Plaintiff failed to exhaust his administrative remedies prior to filing this § 1983 action. The Prison Litigation Reform Act (PLRA) requires that a prisoner exhaust administrative remedies before filing a § 1983 action concerning his confinement. *See* 42 U.S.C. § 1997e(a). Moreover, in *Porter v. Nussle,* 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002), the Supreme Court held that the PLRA's exhaustion requirement applies to all inmate suits involving prison life. In his pleadings, Plaintiff presented evidence that he exhausted administrative remedies before filing his complaint with the Court. *See* August Attachments, Exhibits A–D. Therefore, the Defendants request to dismiss for failure to exhaust administrative remedies is **DENIED**.

### B. Request to Remove Defendant Givens and Defendant Quiero from Suit

Defendants request that both Defendant Givens and Quiero be removed from the suit because neither had any personal involvement in making decisions regarding Plaintiff's placement in a smoking cell. Plaintiff's included Defendant Quiero in this suit because Plaintiff provided Quiero with his first grievance regarding being celled with a smoker. Complaint, p. 4a. Defendant Quiero, with no alleged power to move inmates, passed on the complaint to Lieutenant Boone, who formally responded to Plaintiff's concerns. *See* August Attachments, Exhibit A. The facts show that, other than passing along Plaintiff's complaint, Defendant Quiero committed no acts against Plaintiff. The Court cannot sustain claims against Defendant Quiero on such limited connection to Plaintiff's injuries. Even if Plaintiff presented a sufficient connection regarding Defendant Quiero's knowledge of harms inflicted upon Plaintiff, Defendant Quiero passed along Plaintiff's complaint to an individual capable of helping Plaintiff, thus removing any claim of indifference. Accordingly, Defendants' request for summary judgment as to the claims against Defendant Quiero is **GRANTED.**[5]

---

5. In addition, Plaintiff included Quiero as a defendant because of his failure to implement disciplinary actions against Officer Clinks-

cales for her treatment of Plaintiff when she forced Plaintiff into a smoking cell. However, *respondeat superior* claims are not action-

■ The Court must also grant Defendants' request to remove Defendant Givens from this suit. Plaintiff alleges that, as Records Manager, Defendant Givens has the power to remove Plaintiff from a smoking cell, but failed to take any action. Defendants claim that Defendant Givens had no involvement other than reviewing Plaintiff's records and informing Warden Pearson of the prison's rationale for moving Plaintiff during January 2002. In his reply memorandum, Plaintiff never responded to Defendants claim with any additional facts. Even taking the facts in the most favorable light, the most that can be said about Defendant Givens involvement is that he is the manager of the department that oversees cell transfers. *Respondeat superior* claims are not actionable under § 1983. *See Monell v. Dep't. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir.1977). Accordingly, Defendants' request for summary judgment as to the claims against Defendant Givens is **GRANTED**.

## C. Injunctive and Declaratory Relief

■ The Court must also dismiss Plaintiff's claims for injunctive and declaratory relief. "To be justiciable under Article III of the Constitution, the conflict between the litigants must present a 'case or controversy' both at the time the lawsuit is filed *and* at the time it is decided. If intervening factual ... events effectively dispel the case or controversy during pendency of the suit, the federal courts are powerless to decide the questions presented." *Ross v. Reed*, 719 F.2d 689, 694 (4th Cir.1983). When an inmate is dismissed from a prison system, "there is no longer a 'substantial controversy' between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of [injunctive or] declaratory relief." *See Inmates v. Owens*, 561 F.2d 560, 562 (4th Cir.1977) (citing *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969)); *see also Ross*, 719 F.2d at 694. Plaintiff transferred to another prison institution, which "rendered moot [his] claims for injunctive and declaratory relief, since he is unlikely to return to [the prison]." *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir.1991); *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir.1987). Plaintiff's case is not mooted in its entirety, because he seeks monetary compensation.[6] *Williams*, 952 F.2d at 823.

## D. Eight Amendment Claim and Qualified Immunity

Plaintiff alleges that Defendants exposed him to high levels of ETS, in violation of the Eighth Amendment's prohibition against cruel and inhumane treatment.

---

able under § 1983. *See Monell v. Dep't. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *but cf. Reid v. Kayye*, 885 F.2d 129, 131–132 (4th Cir.1989)(holding that "while the doctrine of *respondeat superior* cannot be invoked in § 1983 cases, supervisory officials may be held liable in certain circumstances for constitutional injuries inflicted by their subordinates. Liability in those circumstances is not premised on *respondeat superior* but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in constitutional injuries.")(internal citations omitted); *Carter v. Morris*, 164 F.3d 215, 221

(4th Cir.1999)(stating that, to sustain a supervisory liability claim, "[a] plaintiff must show actual or constructive knowledge of a risk of constitutional injury, deliberate indifference to that risk, and an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.").

**6.** It should be noted that equitable remedies are for suits against Defendants in their official capacities, while the causes of action that seek monetary remedies sue the Defendants in their individual capacities.

In addition, Plaintiff asserts that Defendants and Nurse Stem failed to address his concerns of direct injuries resulting from ETS exposure, also in violation of the Eighth Amendment. Defendants respond by stating that prison safety is paramount, and takes precedent over Plaintiff's concerns to not be housed in an unsafe level of ETS. In addition, Defendants scoff at Plaintiff's claim that a person who smokes a pack of cigars in his cell during a 19 hour period, every day, within two feet of Plaintiff, would generate an unreasonable and unconstitutionally high amount of ETS. Defendants further claim that they were not deliberately indifferent to Plaintiff's requests, and that they were unaware of Plaintiff's concerns.

■ Courts use the Eighth Amendment to scrutinize conditions of a prisoner's confinement. *See Youngberg v. Romeo*, 457 U.S. 307, 315–316, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)(noting that it is "cruel and unusual punishment to hold convicted criminals [in] unsafe conditions."). In *Helling v. McKinney*, 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993), the Supreme Court of the United States concluded that an inmate can state a cause of action under the Eighth Amendment for present injuries as well as future damage resulting from exposure to ETS. *Helling*, 509 U.S. at 33, 113 S.Ct. 2475 (declaring that "[i]t would be odd to deny [relief] to inmates who plainly proved an unsafe, life-threatening conditions in their prison on the ground that nothing yet had happened to them."); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)(analyzing claims of present harms for potential Eighth Amendment violations). Thus, the Eighth Amendment not only protects inmates suffering from current unconstitutional prison conditions, but also protects inmates against prison conditions which threaten to cause future health problems. *Helling*, 509 U.S. at 31–34, 113 S.Ct. 2475.

*(i) Constitutional Right Against Future Injury*

■ In regards to future injuries, an inmate "states a cause of action under the Eighth Amendment by alleging that [prison officials] have, with deliberate indifference, exposed him to levels of ETS that pose an unreasonable risk of serious damage to his future health." *Helling*, 509 U.S. at 35, 113 S.Ct. 2475. Similar to present injury claims, courts require inmates prove both an objective and subjective component to an Eighth Amendment violation. Under the objective component, an inmate must demonstrate that he has been exposed to unreasonably high levels of ETS. *Id.* at 36, 113 S.Ct. 2475. Relevant to an objective determination of exposure to ETS is the present circumstances surrounding Plaintiff's incarceration, and whether the prison policy is "administered in a way that will minimize the risk to [Plaintiff] and make it impossible for him to prove that he will be exposed to unreasonable risk with respect to his health." *Id.* at 35–36, 113 S.Ct. 2475. In addition, courts "assess whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Id.* at 36, 113 S.Ct. 2475. The subjective component of the test requires courts to determine whether defendants were deliberately indifferent to plaintiff's exposure to ETS. *Id.* Courts consider the facts surrounding the claims of indifference "in light of the prison authorities current attitudes and conduct, which may have changed considerably since" the filing of this case. *Id.* at 36, 113 S.Ct. 2475. "[D]epending how the ... policy is administered, it could be very difficult to demonstrate that prison authorities are ignoring possible dangers posed

by exposure to ETS." *Id.* at 36, 113 S.Ct. 2475.

In *Helling,* the prisoner complained against prison official's lack of response to his ETS exposure resulting from a cellmate smoking five (5) packs of cigarettes a day. The Supreme Court held that such a claim violates the Eighth Amendment, and that a prisoner should have an opportunity to prove a constitutional violation. *Helling,* 509 U.S. at 36–37, 113 S.Ct. 2475. Since this decision, "almost every Court of Appeals that has addressed this issue has recognized that a prisoner's right to be free from levels of ETS that pose an unreasonable risk of future harm was clearly established by *Helling.*" *Atkinson,* 316 F.3d at 263. For example, in *Keane v. Warren ("Keane I"),* 937 F.Supp. 301, 305 (S.D.N.Y.1996), *aff'd ("Keane II"),* 196 F.3d 330 (2d Cir.1999) the court found summary judgment inappropriate where a question of fact exists as to whether the levels of ETS to which the plaintiffs were exposed violated contemporary standards of decency. *See also Gill v. Smith,* 283 F.Supp.2d 763, 767 (N.D.N.Y.2003)(denying an officer's summary judgment request because material issues of fact existed "as to whether [the defendant officer] smoked while on duty and, if he did, whether, given [the officer's] knowledge of Plaintiff's medical condition, the level of ETS to which he allegedly exposed Plaintiff violated contemporary standards of decency."). Likewise, in *Atkinson,* the Third Circuit upheld a denial of summary judgment where an inmate complained of being housed with a smoking cellmate for seven months. *Atkinson,* 316 F.3d at 265–266; *see also Helling,* 509 U.S. at 36, 113 S.Ct. 2475 (deciding that a potential Eighth Amendment violation exists on the fact that inmates can be forced to be celled with smoking inmates against their will, but noting that a change in policy which eliminates this problem could "make it impossible to prove that he will be exposed to unreasonable risk with respect to his future health.").

■ The Court agrees with the circuit decisions which support the conclusion that Plaintiff's claims state a cognizable future injury under the Eighth Amendment, and that Plaintiff should be allowed the opportunity to prove his injuries. Plaintiff presented evidence which shows he complained respiratory problems as early as May 2001, which worsened when Defendants housed him with a smoking cellmate. The evidence also shows that the IOP allows prison officials to completely disregard health concerns whenever administrative needs dictate In fact, an inmates request not to be housed with a smoking cellmate is the last factor considered when prison officials decide where to place an inmate. The VDOC's smoking policy is in direct conflict with *Helling,* because the policy fails to properly consider health concerns. Additionally, the Court has concerns whether the psychological harm imposed by fear of impending death from second hand smoke may be enough in and of itself to establish future harms under the Eighth Amendment. *See Williams,* 952 F.2d at 825 (*citing Johnson v. Levine,* 588 F.2d 1378, 1380 (4th Cir.1978))(noting that apparent psychological harms can be inferred from intolerable prison conditions).

■ Plaintiff has also presented facts showing Defendants' deliberate indifference to his health concerns. Similar to VDOC's policy, the prison smoking policy in *Keane* stated that inmates could be placed in double cells with smoking cellmates, regardless of their health concerns. *Keane II,* 196 F.3d at 331–332. Plaintiff submitted an affidavit, grievance forms, and medical records detailing how prison officials not only knew of his health prob-

lems and the fact that officials housed him with a smoking cellmate, but that prison officials completely disregarded Plaintiff's concerns by refusing to move him to a cell with a nonsmoker. In addition, the medical records and Nurse Stem's affidavit both reveal complaints regarding respiratory problems, but found them "non-emergency" related. Such statements show that Defendants and Nurse Stem never considered the consequences of future health problems, but were only concerned with administrative convenience. Most importantly, VDOC's policy appears in clear contravention with *Helling*, because it allow individuals to be celled with smokers regardless of their individual health issues. Accordingly, the Court finds that, viewing the record most favorably for the Plaintiff, Plaintiff has established that Defendants and Nurse Stem violated his constitutional right to be free from future health harms.

### (ii) Qualified Immunity in Regards to Future Injury Claims

In a qualified immunity analysis, the Court's first inquiry is "whether plaintiff's allegations, if true, establish a constitutional violation." *See Mellen v. Bunting,* 327 F.3d 355 (4th Cir.2003)(citing *Hope v. Pelzer,* 536 U.S. 730, 736, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)). Because the Court has found that a constitutional violation existed, *see supra,* the Court must now address whether the law was sufficiently clear regarding an inmate's right not to be exposed to ETS. As noted above, to withstand Defendants' claim of qualified immunity, the contours of the constitutional right must have been so conclusively drawn at the time of the incident "to make it plain to reasonable officers that their actions under these particular circumstances violated [Plaintiff's] rights." *Odom,* 349 F.3d at 773 (*quoting Winfield v. Bass,* 106 F.3d 525, 531 (4th Cir.

1997))(*enc banc*); *see also Swanson v. Powers,* 937 F.2d 965, 969 (4th Cir.1991) (*quoting Anderson,* 483 U.S. at 640, 107 S.Ct. 3034). However, the chronic problem "in applying the test for qualified immunity is defining the right at issue in a manner that is neither too broad (thereby exposing officials to numerous suits based on violations of abstract rights) nor too narrow (thereby insulating nearly all discretionary decisions from liability)." *Keane II,* 196 F.3d at 332. Further complicating the Court's analysis is the fact that "[o]fficials can still be on notice that their conduct violates established law even in novel factual circumstances." *Jones,* 325 F.3d at 531; *see also Jean v. Collins,* 155 F.3d 701, 708 (4th Cir.1998) (*en banc*)(noting that the nonexistence of a case holding the defendant's identical conduct to be unlawful does not prevent the denial of qualified immunity). What is obvious is that the contour must be clear such that "a reasonable official would understand that what he is doing violates that right . . . [which] is to say that in light of pre-existing law the unlawfulness must be apparent." *Jones,* 325 F.3d at 531 (*quoting Hope v. Pelzer,* 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002)).

Several circuits have found that *Helling* created sufficient contours to deny an officials request for qualified immunity for causing future harms. For instance, the Second Circuit upheld the lower courts denial of qualified immunity where an inmate complained of ETS exposure from cellmates' smoking, and suffered from headaches, dizziness, and nausea. *Keane II,* 196 F.3d at 333. In it's decision, the court opined that after *Helling,* "it was clearly established that prison officials could violate the Eighth Amendment through deliberate indifference to an inmate's exposure to levels of ETS that posed an unreasonable risk of future harm

to the inmate's health." *Id.* Furthermore, the court found that it would be unreasonable for prison officials to contend that there was no constitutional violation when the prison environment "permeated with smoke." *Id.* Similarly, in *Atkinson,* the Third Circuit denied a request for qualified immunity because *Helling* established a constitutional right, and that a reasonable officer would understand when he is violating that right when he houses an inmate with a "constant smoker." *Atkinson,* 316 F.3d at 264–265; *see also Rochon v. City of Angola, Louisiana,* 122 F.3d 319, 320 (5th Cir.1997) (denying request for qualified immunity under Rule 12(b)(6) because the inmate alleged that his living environment permeated with tobacco smoke, despite possessing no present health conditions).

■ The Court finds that a reasonable person should have known that Plaintiff's constitutional rights were being violated by his exposure to ETS. Similar to *Helling,* Plaintiff's exposure to ETS in this case was to a degree that would have lead a reasonable official to conclude that a plaintiff's rights were violated. Under no standard of decency could it be contended that leaving a nonsmoker in a small enclosed cell for 19 hours a day with a habitual cigar smoker is reasonable. Defendants are not entitled to qualified immunity. Nor is Nurse Stem entitled to qualified immunity because she knew of Plaintiff's situation, but never considered if such a scenario affected his future health. *Helling* requires that officials look beyond present health conditions and consider the effects of prison environment on an inmate's future health. *See Helling,* 509 U.S. at 33, 113 S.Ct. 2475 (rejecting the proposal that "prison authorities may not be deliberately indifferent to an inmate's current health problems but may ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year."). Accordingly, Defendants' and Nurse Stem's motions for qualified immunity on plaintiff's claim for future injuries are **DENIED.**

*(iii) Constitutional Right Against Present Injury Claims*

■ Plaintiff complains that his involuntary exposure to ETS exacerbated respiratory problems, and that while housed with the smoking cellmate, he experienced mild headaches, difficulty breathing, eye irritation, runny nose, dizziness and occasional stomach cramping. In *Estelle,* the Supreme Court laid down the framework to analyze present harms inflicted upon an inmate which could create unconstitutional prison conditions. Specifically, "[i]n order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference [by prison officials] to serious medical needs." *Estelle,* 429 U.S. at 106, 97 S.Ct. 285. Proof of deliberate indifference requires "more than mere negligence but less than malice. This is appropriate because the States' responsibility to provide inmates with medical care or decent living conditions ordinarily does not conflict with competing administrative concerns." *Williams v. Benjamin,* 77 F.3d 756, 761 (4th Cir.1996) (internal quotes and citations omitted).

In applying this test, courts have found that, "[e]ven in less serious cases, where the prisoner does not experience severe torment or a lingering death, the infliction of unnecessary suffering is inconsistent with standards of decency." *Atkinson v. Taylor,* 316 F.3d 257, 266 (3d Cir.2003). For example, the Eighth Circuit held that ETS exposure which resulted in severe headaches, nausea, dizziness, and breath-

ing difficulties constituted a·serious medical need, and failure to remove an inmate from the environment which caused these symptoms violated the Eighth Amendment. *See Weaver v. Clarke,* 45 F.3d 1253, 1254 (8th Cir.1995). Similarly, the Third Circuit found that the involuntary housing of a prison inmate with a continuous-smoking cellmate, which results in, *inter alia,* breathing difficulties, headaches, coughing, and teary eyes, constitutes an Eighth Amendment violation for present injury harms. *Atkinson,* 316 F.3d at 267–268; *see also 'Alvarado v. Litscher,* 267 F.3d 648, 653 (7th Cir.2001)(finding potential Eighth Amendment claim where inmate alleges ETS exacerbated his chronic asthma).

■■■ Viewing the record most favorably for Plaintiff, his allegations state a cognizable claim under the Eighth Amendment. *De'Lonta v. Angelone,* 330 F.3d 630, 634 (4th Cir.2003); *Williams,* 77 F.3d at 765. The facts show that Defendants knew of Plaintiff's complaints regarding ETS exposure, as well as his alleged ailments resulting from exposure, and did nothing to alleviate the problems. Accordingly, "[w]e agree with [Plaintiff] that such allegations adequately state a claim for relief and that the record does not demonstrate beyond doubt that [Plaintiff] could not prove those allegations." *De'Lonta,* 330 F.3d at 634. Moreover, Plaintiff's medical records show that he complained of respiratory problems in May 2001, that he complained that he still had those problems in January 2002, and that the smoking exacerbated his undiagnosed problem. Such complaints, if true, establish a constitutional violation.[7]

### (iv) Qualified immunity with Regards to Plaintiff's Claims of Present Injury

As the preceding section satisfies the first prong of the qualified immunity analysis, the Court will address whether the law was sufficiently clear regarding an inmate's right not to be exposed to ETS. Important to the contours of Plaintiff's constitutional right against present harms, "*Estelle* makes clear that if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." *Atkinson,* 316 F.3d at 266. Such indifference is more apparent where an inmate's medical condition is exacerbated by the exposure to ETS, and prison officials fail to provide medical care. *See Hunt v. Reynolds,* 974 F.2d 734, 735–736 (6th Cir.1992)(finding that, even before *Helling,* exposing a prisoner with a pre-existing medical condition to ETS in amounts which represent a serious health threat constitutes an Eighth Amendment violation). As noted by the Seventh Circuit: "[m]edical consequences of tobacco smoke do not differ from other medical problems. Prisoners ... who can attribute their serious medical conditions to smoke, are entitled to appropriate medical treatment, which may include removal from places where smoke hovers." *Steading v. Thompson,* 941 F.2d 498, 500 (7th Cir. 1991).

Several circuit opinions also provide guidance as to the contours of an inmate's right. In *Weaver,* the Eighth Circuit addressed an inmate's allegations that prison officials allowed the plaintiff to be housed with a "heavy smoker," and were repeatedly unresponsive to any of the prison-

---

**7.** In addition, questions still remain as to material facts; Plaintiff has presented evidence via his medical record rebutting Defendants' claim that Plaintiff never informed officials to his predicament. Resolution of such issues are reserved for the trier of fact.

er's requests and protests, which included complaints that he suffered from "various medical problems," including but not limited to, headaches, nausea, and dizziness. *Weaver* 45 F.3d at 1256. Although the defendants brought the motion for qualified immunity under Fed.R.Civ.P. 12(b)(6), the court found qualified immunity inappropriate because the inmate's "claim is one of deliberate indifference to his existing medical needs. Such claims were first recognized by the Supreme Court [in *Estelle*]." *Id.* Likewise, the Third Circuit denied a qualified immunity request where the inmate "produced evidence that after telling prison officials about his sensitivity to ETS no change was made in housing conditions . . . which demonstrates deliberate indifference on the part of prison officials" *Atkinson,* 316 F.3d at 269. Similarly, the Second Circuit upheld a district court's denial of qualified immunity at the summary judgment stage where prison policies did not regulate smoking in, *inter alia,* private residences, and inmates suffered "from sinus problems, headaches, dizziness, . . . and nausea as a result of exposure to ETS," *Keane II,* 196 F.3d at 331–333. The court applied *Helling* to establish the contour of a prisoner's right, finding that "a court need not have passed on the identical conduct in order for its illegality to be 'clearly established.' " *Id.* at 333; *Alvarado,* 267 F.3d at 653 (declaring that, after *Helling,* prison officials were on notice that exposing a nonsmoking inmate with respiratory problems to "an environment in which ambient tobacco smoke is present" could constitute an Eighth Amendment violation).

The Court finds that the contours of Plaintiff's Eighth Amendment right's were sufficiently defined to give an officer reasonable notice regarding unreasonable exposure to ETS. As seen by prior decisions, *Helling* incorporated unreasonable ETS exposure, both future and present, as constitutional violations. In addition, *Helling* specifically noted that prison smoking policies can determine whether a court can find deliberate indifference. Here, VDOC's smoking policy as written disregards the *Helling* decision in its entirety. Moreover, Defendants failed to seriously consider Plaintiff's concerns, and housed him with a smoker from December 19, 2001, until he was transferred to D.C. authorities. In fact, prison officials claimed that they could charge Plaintiff with disobeying an order and segregate Plaintiff for suggesting that, health wise, he is incapable of being housed with a smoker. Even worse, Defendants alleged that a nonsmoking individual with alleged respiratory problems, who is subjected to sitting in an maximum security enclosed cell for 19 hours a day with a cellmate who smokes a pack of cigars every day, which results in dizziness, headaches, nausea, and stomach cramps, withstands an evaluation under the current standards of decency. The Court cannot adopt Defendants' faulty reasoning. Accordingly, Defendants' request for Qualified immunity against Plaintiff's present injury claim is **DENIED**.

Additionally, Nurse Stem did nothing to help Plaintiff with his health problems, because her opinion was that they were not "emergency related." Her standard of what constitutes a serious medical need is higher than what the Constitution considers unreasonable. As noted above, the Supreme Court established an inmate's Eighth Amendment right to be free from unnecessary and wanton infliction of pain resulting from an officer's deliberate indifference to an inmate's serious medical needs; medical conditions which can include less serious symptoms such as those presented in this case. *Estelle,* 429 U.S. at 103–104, 97 S.Ct. 285; *see also Weaver,* 45 F.3d at 1254. Accordingly, Nurse Stem's request for Qualified immunity against

Plaintiff's present injury claim is **DE-NIED.**

## IV.  CONCLUSION

For the foregoing reasons, Defendants' and Nurse Stem's motion for summary judgment is **GRANTED IN PART, and DENIED IN PART.**[8] In addition, Defendants' and Nurse Stem's request for qualified immunity is **DENIED.**  Finally, Plaintiff's claims for Injunctive and Declaratory Relief are **DISMISSED as MOOT.**

The Clerk of the Court is **DIRECTED** to send a copy of this Memorandum Opinion and Order to counsel for the parties.

**IT IS SO ORDERED.**

---

**8.**  The Court finds the rest of Defendants' arguments meritless.  First, Defendants' claim that Plaintiff's initial housing with a non-smoker show that no deliberate indifference exists fails to consider that officials' deliberate indifference started when Defendants' rejected all of Plaintiff's requests for help once he was housed with a smoking roommate.  Second, plaintiff's allegation of no real injury has no merit because "[i]n the absence of a showing of actual injury, [Plaintiff] still would be entitled to nominal damages upon proof of a constitutional violation." *Williams*, 952 F.2d at 825 n. 2.  Third, the Court cannot understand how Defendant's believe Warden and Mr. Fleming were not personally involved in violating Plaintiff's constitutional rights.  Both individuals directly rebuffed Plaintiff's concerns during his administrative grievance proceedings.  Fourth, contrary to Defendant's claims, Plaintiff does not even alleged that double-celling violates the Constitution.  Fifth, and lastly, Defendants misconstrue Plaintiff's claims against them when they allege that medical treatment claims cannot be brought against non-medical personnel.  Plaintiff only states a medical treatment claim against Nurse Stem, i.e., her failure to properly diagnose and treat his problematic symptoms in January 2002.  The claims against Defendants involve placing an inmate in a prison environment with unreasonably high levels of ETS, resulting in Plaintiff's health problems, and Defendants' failure to follow constitutional precedent which clearly established that placing an individual in such an environment violates the Eighth Amendment.